[No. 21633-3-I.   Division One.   October 2, 1989.]

THE STATE OF WASHINGTON, *Respondent*, v. ROBERT D. WARREN, *Appellant*.

*Tom P. Conom,* for appellant.

*Seth R. Dawson, Prosecuting Attorney,* and *Seth Aaron Fine, Deputy,* for respondent.

SWANSON, J.—Robert D. Warren appeals from the judgment and sentence entered following his convictions for attempted first degree statutory rape and attempted second degree rape. We affirm.

Warren was charged by information filed August 3, 1987, with attempted second degree rape (count 1) and first

degree statutory rape (count 2). The allegations involved "B," age 13, and "C," age 9, the daughters of Mona C., Warren's longtime acquaintance. At trial, Mona characterized Warren, who lived nearby, as a "best friend," who had been "like a dad" to her three daughters. Mona's daughters regularly visited Warren, who would pay them to do chores around his house.

Mona stated that she was home at about 12:30 a.m. on May 31, 1987, when B, who had spent the afternoon and evening with Warren, came through the door. Mona described B as "gasping for breath . . . scared . . . crying." At first, B was unable to tell Mona what was wrong. Finally, B said that "Bob took my pants down." B explained that she had managed to fight her way free and run home. Mona's fiance and brother were both present when B arrived home and essentially corroborated Mona's account.

B testified that she had been at Warren's house on the afternoon of May 30 to stack wood and cut weeds. Later, Billie Ingersoll, Warren's girl friend, arrived and the three went out for dinner. B stated that she and Warren sat in the rear seat of the car while Ingersoll drove home from the restaurant. During the ride, Warren repeatedly placed his hand on B's knee.

Upon returning to Warren's house, the three had dessert while B watched a movie. Ingersoll left sometime around midnight. Shortly thereafter, B asked Warren for a ride home. According to B, Warren, who was wearing pants but no shirt, wrapped his arms around her and pulled her to the floor. During the ensuing struggle, Warren pulled down B's pants and underwear. B managed to break free, pull up her pants, and run out the door. She hid in the bushes while Warren came outside looking for her and then ran home. B denied arguing with Warren about payment for her work.

After B related what happened to her, Mona called the police. Detective James Scharf interviewed B and then drove to Warren's house, where he arrived at about 2 to 3

a.m. Scharf observed Warren sleeping on the couch, wearing pants, but no shirt. According to Scharf, Warren denied having had any problems with B during the course of the evening.

Mona testified that on the day after the incident involving B, she told her daughter C that Warren had tried to take B's pants down. When everyone had left the room, C told her mother that "Bob does that to me all the time." When Mona asked C to be more specific, she replied, "He makes me take my clothes off . . . [and then he] gets on top of me." After being found competent, C testified that while she was at Warren's house, Warren would have her remove her clothes and that Warren would then remove his own clothes and lie down on top of her. C indicated that Warren would place his penis against her crotch and that it hurt "really bad." C testified that Warren would also have her touch his penis and that such activity would go on for 10 to 15 minutes.

Dr. George Cozzetto, director of the Providence Hospital Emergency Department, testified that he examined C in June 1987, approximately 2 weeks after the last alleged contact occurred. According to Dr. Cozzetto, C indicated that "a man had laid on top of her and had tried to put his penis in . . . her pee–pee." C's vaginal examination was inconclusive.

Warren's account of the activities on the afternoon of May 30 was essentially consistent with B's. Warren maintained, however, that he rode in the front seat of the car on the way home from dinner and did not touch B on the leg. According to Warren, B remained after Ingersoll left and then asked him for $40 for the work she had done. When Warren refused, telling B that she had to complete the entire job before getting paid, B became "a little angry." Warren also refused B's request for $10 or $20. B then told Warren that she was going to walk home and left. Warren stated that he did not follow B out the door but rather went to sleep on the couch. Warren disputed the testimony

that he was not wearing a shirt when the police awakened him.

Warren also denied C's allegations. Several neighbors testified that Warren was an honest person and that C was known as "a story teller . . . and likes to get attention," and that it had been "a little difficult" for B and C "to tell the truth on different occasions."

The jury returned verdicts finding Warren guilty of attempted first degree statutory rape for the allegations involving C, and guilty of attempted second degree rape for the allegations involving B. Warren was sentenced to concurrent terms of 30 and 40 months.

Warren first contends that the trial court erred by admitting C's hearsay statements to her mother and others without holding the hearing required by RCW 9A.44.120,[1] Washington's child victim hearsay statute. Usually, the trial court's failure to comply with the hearing requirements of RCW 9A.44.120 constitutes error. *State v. Leavitt*, 111 Wn.2d 66, 71, 758 P.2d 982 (1988), *aff'g* 49 Wn. App. 348, 743 P.2d 270 (1987); *State v. Jackson*, 46 Wn. App. 360, 730 P.2d 1361 (1986).[2] However, counsel for Warren failed to object to the absence of a hearing and failed to object to the testimony during trial. A party's failure to

---

[1]RCW 9A.44.120 provides in pertinent part:

"A statement made by a child when under the age of ten describing any act of sexual contact performed with or on the child by another, not otherwise admissible by statute or court rule, is admissible in evidence in . . . criminal proceedings in the courts of the state of Washington if:

"(1) The court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide sufficient indicia of reliability; and

"(2) The child either:

"(a) Testifies at the proceedings; or

"(b) Is unavailable as a witness: *Provided,* That when the child is unavailable as a witness, such statement may be admitted only if there is corroborative evidence of the act."

[2]In his brief, appellant refers to a minute entry indicating counsel for the defendant may have waived a child victim hearsay hearing. This minute entry does not appear to be part of the appellate record.

object at trial precludes appellate review unless the alleged error is "truly of constitutional magnitude". *State v. Scott,* 110 Wn.2d 682, 688, 757 P.2d 492 (1988); *see also* RAP 2.5(a)(3).

In *State v. Leavitt, supra,* counsel for the defendant failed to object to the trial court's failure to hold the hearing required by RCW 9A.44.120 until well into presentation of the defendant's case. Our Supreme Court held that because both the child declarant and the hearsay recipients had testified at trial and were available for cross examination, no constitutional confrontation or due process concerns were implicated by the omission of the hearing. Consequently, defendant's failure to raise a timely objection precluded appellate review. *Leavitt,* at 71–72.

■ *Leavitt* controls here. As in *Leavitt,* the hearsay declarant and the hearsay recipients testified and were subject to full cross examination. Consequently, no issue "truly of constitutional magnitude" was involved and the trial court's failure to hold a hearing pursuant to RCW 9A.44.120 was not preserved for appellate review. *Cf. State v. Jackson, supra* (objection to failure to hold hearing sufficient to preserve review). Similarly, Warren's contention that he had to execute a written waiver of the hearing will not be considered for the first time on appeal.

■ Warren next argues that RCW 9A.44.120 conflicts with the Washington Rules of Evidence and therefore violates article 4, section 1 of the Washington Constitution.[3] In rejecting a comparable "separation of powers" argument, our Supreme Court in *State v. Ryan,* 103 Wn.2d 165, 691 P.2d 197 (1984) noted that the legislative enactment of hearsay exceptions is specifically contemplated by ER 802. *Ryan,* at 178. Statutory hearsay exceptions are subject to judicial review, however, with our Supreme Court as the

---

[3]Const. art. 4, § 1 reads: "**JUDICIAL POWER, WHERE VESTED.** The judicial power of the state shall be vested in a supreme court, superior courts, justices of the peace, and such inferior courts as the legislature may provide."

final arbiter. *Ryan* (rejecting contention that RCW 9A.44-.120 conflicted with court rules regarding competency). We also rejected a similar separation of powers challenge to RCW 9A.44.120 in *State v. Slider*, 38 Wn. App. 689, 695–96, 688 P.2d 538 (1984), *review denied*, 103 Wn.2d 1013 (1985).

We decline appellant's invitation to adopt the reasoning of *State v. Robinson*, 153 Ariz. 191, 735 P.2d 801 (1987), in which the Arizona Supreme Court held that a statutory hearsay exception essentially identical to RCW 9A.44.120

> conflicts with and "engulfs" the rules of evidence, impermissibly infringing on this court's constitutional authority to make procedural rules for the judiciary.

*Robinson*, at 198. *Robinson* is inapposite, as it rests on a state constitutional provision that differs substantially from Const. art. 4, § 1. Moreover, appellant has directed no argument to the language and effect of the Washington constitutional provision that he cites. *See generally State v. Wethered*, 110 Wn.2d 466, 472, 755 P.2d 797 (1988).

■ Warren next challenges the following testimony elicited during redirect examination of Mona:

Q. Have you ever known [B] to have ever accused someone of doing something important that you later found out was not true?
[Defense Counsel]: Objection. That is kind of a vague—
THE COURT: Overruled. You may answer.
A. Can you ask me again?
Q. Have you ever known [B] to accuse someone of doing something really major or really important that you later found out was not true?
A. I don't think so. I explained this. I said, "You'd better make sure because you're talking very serious here about what can happen to him and you'd better make sure you're telling the truth."
She said, "*Mom, I would never lie about anything like this.*"

(Italics ours.) Although Warren has assigned error to the trial court's ruling on the objection to the question, his argument is directed to the emphasized portion of the answer, which was nonresponsive. Counsel for the defendant failed to object to or move to strike the nonresponsive

answer. On appeal, Warren contends that the answer was inadmissible hearsay, was irrelevant, and that its prejudicial effect outweighed its probative value. Because Warren failed to raise these objections below, and they do not implicate constitutional concerns, they will not be considered for the first time on appeal. *See State v. Guloy,* 104 Wn.2d 412, 422, 705 P.2d 1182 (1985), *cert. denied,* 475 U.S. 1020 (1986).

Warren next contends that he was denied effective assistance of counsel. In particular, he identifies as deficient (1) trial counsel's intentional or unintentional waiver of a reliability hearing for C's hearsay statements; (2) trial counsel's failure to object to Mona's hearsay account of B's identification of Warren; (3) trial counsel's cross examination permitting Detective Scharf to express his belief in Warren's guilt; and (4) trial counsel's failure to move to sever.

The test for ineffective assistance of counsel is whether "(1) defense counsel's performance fell below an objective standard of reasonableness, and (2) whether this deficiency prejudiced the defendant." *State v. James,* 48 Wn. App. 353, 359, 739 P.2d 1161 (1987) (citing *Strickland v. Washington,* 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984)). In order to demonstrate prejudice, the defendant must show a reasonable probability that but for counsel's deficient performance, the result would have been different. *State v. Leavitt,* 49 Wn. App. 348, 359, 743 P.2d 270 (1987), *aff'd,* 111 Wn.2d 66, 758 P.2d 982 (1988). A "reasonable probability" is a probability "sufficient to undermine confidence in the outcome." *Leavitt.* Scrutiny of counsel's performance under the first prong is highly deferential; we will indulge in a strong presumption of reasonable representation. *State v. Thomas,* 109 Wn.2d 222, 226, 743 P.2d 816 (1987). When a claim of ineffective assistance can be more easily resolved on the basis of a lack of prejudice, the court should do so. *Strickland,* 466 U.S. at 697.

We cannot perceive a legitimate trial strategy in counsel's apparent decision to waive a reliability hearing. *Cf. State v.*

*Leavitt,* 49 Wn. App. at 359. However, even if we assume counsel's decision constituted deficient performance, there is no reasonable probability that the outcome of the proceeding would have been different had the alleged error not occurred. First, a review of the *Ryan* factors indicates that the hearsay statements would have been found reliable and admissible pursuant to RCW 9A.44.120.[4] Second, even if the hearsay statements would have been found inadmissible, the result most likely would not have been different. C took the stand and gave an explicit account of sexual contact with Warren that essentially "mirrored" the challenged hearsay statements. *See State v. Leavitt,* 111 Wn.2d at 73. Similarly, counsel's failure to object to Mona's account of B identifying Warren was not prejudicial. B herself testified to the same course of events.

Defense counsel's cross examination of Detective Scharf, which elicited an opinion of Warren's guilt, was a legitimate attempt to establish Detective Scharf's bias and undermine the credibility of his account of Warren's arrest. Counsel's actions therefore did not constitute deficient performance.

Warren's final allegation of ineffective assistance involves counsel's failure to move to sever. In order to prevail on an ineffective assistance claim based on counsel's failure to seek severance, the defendant must demonstrate both that the motion should have been granted and a "reasonable probability" that, but for counsel's deficient performance,

---

[4]The court in *Ryan* identified the following factors for assessing the reliability of child hearsay statements: "'(1) whether there is an apparent motive to lie; (2) the general character of the declarant; (3) whether more than one person heard the statements; (4) whether the statements were made spontaneously; and (5) the timing of the declaration and the relationship between the declarant and the witness.' [*State v. Parris,* 98 Wn.2d 140, 146, 654 P.2d 77 (1982)]. We added that these factors were not exclusive and should be considered with the additional factors in *Dutton v. Evans,* 400 U.S. 74, 88–89, 27 L. Ed. 2d 213, 91 S. Ct. 210 (1970): (1) the statement contains no express assertion about past fact, (2) cross examination could not show the declarant's lack of knowledge, (3) the possibility of the declarant's faulty recollection is remote, and (4) the circumstances surrounding the statement (in that case spontaneous and against interest) are such that there is no reason to suppose the declarant misrepresented defendant's involvement." *State v. Ryan,* 103 Wn.2d 165, 175–76, 691 P.2d 197 (1984).

the outcome of the proceeding would have been different. *State v. Standifer*, 48 Wn. App. 121, 737 P.2d 1308, *review denied*, 108 Wn.2d 1035 (1987).

The State suggests that defense counsel may have decided not to seek severance for tactical reasons. The State reasons that counsel may have sought to undermine C's testimony by showing its chronological relationship to B's complaint, thereby implying that C was induced, consciously or unconsciously, into supporting the complaint of her sister. Severance, the State maintains, would have been unnecessary for such an approach. Absent any evidence in the record to support this theory, however, we decline to speculate about defense counsel's tactical intentions.

Appellant asserts that defense counsel's failure to seek severance constituted ineffective assistance because joinder is "inherently prejudicial" and evidence of one count would not have been admissible in a separate trial on the other count. Consequently, appellant maintains, severance would have been granted. Appellant relies primarily on *State v. Ramirez*, 46 Wn. App. 223, 730 P.2d 98 (1986), which held that a failure to sever when evidence of one count would not be admissible in a separate trial on the other count constituted an abuse of discretion and required reversal. Appellant fails to address, however, subsequent cases that have declined to follow *Ramirez* to the extent it holds that a failure to grant severance when the evidence of multiple counts would not be cross admissible at separate trials requires automatic reversal. *See State v. Watkins*, 53 Wn. App. 264, 766 P.2d 484 (1989); *State v. Standifer, supra; cf. State v. Gatalski*, 40 Wn. App. 601, 699 P.2d 804, *review denied*, 104 Wn.2d 1019 (1985).

Prejudice may arise from joinder when a defendant is embarrassed in presenting separate defenses or if a single trial might invite the jury to cumulate evidence to find guilt or infer a criminal disposition. *State v. Redd*, 51 Wn. App. 597, 603, 754 P.2d 1041, *review denied*, 111 Wn.2d 1007 (1988). In determining whether this potential for prejudice requires severance, relevant factors include

(1) the strength of the State's evidence on each count, (2) the clarity of defenses as to each count, (3) whether the trial court properly instructed the jury to consider the evidence of each crime, and (4) the admissibility of evidence of the other crimes.

*Watkins,* at 269. No one factor is preeminent; all must be assessed in determining whether potential prejudice requires severance. *Watkins,* at 272 n.3.

Even if it is assumed, however, that severance would have been granted, appellant was not prejudiced by counsel's alleged deficient performance. Given the nature of the charges, the State's evidence was relatively strong. Both of the victims testified, were subject to cross examination, and gave concise accounts of Warren's conduct. In his defense, Warren took the stand and denied the charges outright. The jury thus had a full opportunity to assess the demeanor and credibility of all the parties. We can find no basis to conclude that the jury might reasonably have performed this assessment differently had the charges been tried separately.

In his reply brief, Warren challenges for the first time the sufficiency of the information charging him with first degree statutory rape.[5] The State's motion to strike the brief pursuant to RAP 10.3(c) has been referred by a Commissioner to this panel.

In Washington, the rule is that

[t]he omission of *any* statutory element of a crime in the charging document is a *constitutional* defect which may result in dismissal of the criminal charges.

*State v. Holt,* 104 Wn.2d 315, 320, 704 P.2d 1189 (1985). Warren asserts that the information charging first degree statutory rape here was constitutionally defective because it failed to allege the element of nonmarriage, an argument that rests on two recent conflicting Court of Appeals decisions, *State v. Hodgson,* 44 Wn. App. 592, 722 P.2d 1336

---

[5]Count 2 of the information alleged first degree statutory rape as follows: "That the defendant, on or about the 1st day of May, 1987, through the 30th day of May, 1987, then and there being over thirteen years of age, did engage in sexual intercourse with C, who was less than eleven years of age; proscribed by RCW 9A.44.070, a felony."

(1986), *aff'd,* 108 Wn.2d 662, 740 P.2d 848 (1987) and *State v. Bailey,* 52 Wn. App. 42, 757 P.2d 541, *review granted,* 111 Wn.2d 1019 (1988). To be successfully challenged for the first time on appeal, an information must be so obviously defective as not to charge an offense by any reasonable construction. *State v. Smith,* 49 Wn. App. 596, 598, 744 P.2d 1096 (1987), *review denied,* 110 Wn.2d 1007 (1988).

In *Hodgson,* we held that indecent liberties is not a lesser included offense of first degree statutory rape because nonmarriage of the perpetrator with the victim is not an implicit element of the latter crime. *Hodgson,* at 599–600.[6] In *Bailey,* this court reached a contrary conclusion, holding that nonmarriage was "an implicit element" of first degree statutory rape. *Bailey,* at 46.

■ For purposes of the instant appeal, we need not resolve the apparent conflict. Both *Hodgson* and *Bailey* involved lesser included offenses, an analysis that focuses on whether each element of the lesser offense is a "necessary element" of the charged crime. Such a determination provides little guidance as to the sufficiency of the charging document. Generally,

> it is sufficient, in charging a crime, to follow the language of the statute, where such crime is there defined, and the language used is adequate to apprise the accused with reasonable certainty of the nature of the accusation.

*State v. Forler,* 38 Wn.2d 39, 43, 227 P.2d 727 (1951). This requirement has not been interpreted to mean that an information must allege every fact that the State must eventually prove at trial in order to support a conviction. *See, e.g., State v. Orsborn,* 28 Wn. App. 111, 114, 626 P.2d 980 (1980) ("information need not allege each element of the crime"), *review denied,* 97 Wn.2d 1012 (1982). An information is constitutionally sufficient when it recites all of the essential elements of the charged crime. *State v. Nieblas–Duarte,* 55 Wn. App. 376, 777 P.2d 583 (1989).

---

[6]This portion of the *Hodgson* decision was not reviewed by the Supreme Court.

In the instant case, the information charged Warren with engaging in sexual intercourse with someone who was under the age of 11 years; the information identified the victim and specified a relatively brief period in which the alleged act occurred. Given the nature of the charged act and the age of the alleged victim, the information was constitutionally sufficient to charge a crime. The State's motion to strike Warren's reply brief is denied.

Judgment affirmed.

COLEMAN, C.J., and SCHOLFIELD, J., concur.

Reconsideration denied November 7, 1989.

Review denied at 114 Wn.2d 1004 (1990).