

2015 JUL 20  AM 11: 1

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | NO. 71842-8-I |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| TYLER M. FARRAR-BRECKENRIDGE, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: July 20, 2015 |
| | ) | |

LAU, J. — Tyler Farrar-Breckenridge appeals his jury trial convictions on three counts of rape of a child in the third degree. The charges involved separate incidents with two different victims. Farrar-Breckenridge argues his attorney's failure to move to sever the counts constitutes ineffective assistance of counsel. But because (1) the record shows defense counsel's decision to forego severance was a reasonable strategic decision, and (2) Farrar-Breckenridge cannot show either that the trial court would have granted a severance motion or that the outcome of separate trials would have been different, his ineffective assistance of counsel claim fails. We affirm the judgment and sentence.

## FACTS

A jury convicted Farrar-Breckenridge on three counts of rape of a child in the third degree involving B.B. and C.L.

### Incident Involving B.B.

The incident with B.B. occurred during the summer of 2011 in Granite Falls, Washington. Farrar-Breckenridge lived at his mother's house, and teenagers frequently held social gatherings there. In late July or early August, B.B. went to Farrar-Breckenridge's house with a group of friends. The group included B.B., B.B.'s sister, C.L., C.L.'s brother, and Farrar-Breckenridge and his brother. At the time, Farrar-Breckenridge was 19 (born December 1991), and B.B. was 14 (born April 1997).

The group decided to spend the night at Farrar-Breckenridge's house. B.B. could not find a place to sleep downstairs with everyone else, so she went upstairs to sleep in Farrar-Breckenridge's room. B.B. testified that she got into Farrar-Breckenridge's bed and then he forced her to engage in oral and penile-vaginal sex. B.B. also testified that she remembered crying, telling Farrar-Breckenridge to stop, and pushing him away. At some point, she asked to use the bathroom and ran downstairs. B.B. tried to wake up some of her friends to tell them what happened. The witnesses denied remembering that B.B. tried to wake them up. B.B. eventually left the house in the early morning.

B.B. reported the incident to her counselor over a year later in the fall of 2012. The counselor reported the disclosure to police.

Incident Involving C.L.

On November 14, 2012, 15-year-old C.L. had been drinking at home when she decided to log onto Facebook after 1:00 am. Farrar-Breckenridge sent C.L. a message, asking her if she wanted to watch a movie with him. C.L. declined, stating she planned to go to sleep instead. C.L. snuck out of her house and went to Farrar-Breckenridge's house. C.L. testified that she played beer pong with Farrar-Breckenridge until she eventually threw up. C.L. and Farrar-Breckenridge began kissing and had penile-vaginal intercourse on the living room couch. Afterwards, they watched TV for a few minutes and then went upstairs to Farrar-Breckenridge's bedroom, where they had intercourse again, including anal intercourse. C.L. testified that she never told him to stop but also that she "didn't know what to do." Report of Proceedings (RP) (February 19, 2014) at 57. At one point, she tried to pull away, but Farrar-Breckenridge stopped her.

C.L. did not tell anyone what happened for about two weeks. She eventually told her older cousin about it on Thanksgiving. In February 2013, C.L.'s parents learned about the incident and reported it to police.

In December 2013, Farrar-Breckenridge was charged with two counts of third degree rape of a child involving C.L. and one count of third degree rape of a child involving B.B. under RCW 9A.44.079.[1] Defense counsel never moved to sever any

---

[1] "A person is guilty of rape of a child in the third degree when the person has sexual intercourse with another who is at least fourteen years old but less than sixteen years old and not married to the perpetrator and the perpetrator is at least forty-eight months older than the victim." RCW 9A.44.079(1). The parties did not dispute the ages of the victims or the defendant. The only issue at trial was whether sexual intercourse occurred.

counts. A jury convicted Farrar-Breckenridge on all three counts as charged. The court imposed a sentence of 60 months.

## ANALYSIS

Farrar-Breckenridge argues for reversal of the convictions on grounds he was denied his constitutional right to effective assistance of counsel. He contends that by failing to move to sever three counts of child rape in the third degree, his attorney's performance was deficient and the outcome of the trial would have been different but for this deficiency. We conclude that Farrar-Breckenridge failed to show that his attorney's performance was either deficient or prejudicial. First, the record indicates that defense counsel's decision to forego severance was a reasonable tactical decision. Indeed, the record shows that the defense theory of the case was essentially that the two victims—B.B. and C.L., who were close friends—colluded to manufacture the allegations against Farrar-Breckenridge. Second, Farrar-Breckenridge cannot demonstrate prejudice because it is unlikely the trial court would have granted a severance motion.

I.    Standard of Review

Effective assistance of counsel is guaranteed by both the federal and state constitutions. In re Pers. Restraint of Woods, 154 Wn.2d 400, 420, 114 P.3d 607 (2005). This court reviews claims for ineffective assistance of counsel de novo. State v. Sutherby, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). "To prevail on a claim of ineffective assistance of counsel, counsel's representation must have been deficient, and the deficient representation must have prejudiced the defendant." State v. Aho, 137 Wn.2d 736, 745, 975 P.2d 512 (1999); Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). "To establish ineffective representation,

the defendant must show that counsel's performance fell below an objective standard of reasonableness. To establish prejudice, a defendant must show that but for counsel's performance, the result would have been different." State v. McNeal, 145 Wn.2d 352, 362, 37 P.3d 280 (2002) (citations omitted). Failure to establish either prong of the test is fatal to an ineffective assistance of counsel claim. Strickland, 466 U.S. at 700.

II.    Deficient Performance

Because defense counsel relied on a plausible conspiracy theory between the two victims, foregoing severance was a reasonable strategic decision that advanced the defense's strategy. As such, Farrar-Breckenridge was not deprived of effective assistance of counsel.

Scrutiny of counsel's performance under the deficiency prong is extremely deferential. A defendant asserting ineffective assistance of counsel must overcome a strong presumption that counsel's performance was reasonable. State v. Grier, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011). Accordingly, Farrar-Breckenridge "must show there was no legitimate strategic or tactical reason for counsel's action." Sutherby, 165 Wn.2d at 883.

Here, the record shows that throughout the trial, defense counsel advanced the theory that B.B. and C.L. manufactured the rape allegations against Farrar-Breckenridge as revenge for denying B.B.'s sexual advances. This theory afforded the defense a basis to argue motives and fabrication.

For example, in his motions in limine, defense counsel suggested that the rape allegations were part of a coordinated plan to attack his client:

> After C.L. disclosed her alleged rape to her mother, [C.L.'s mother] went on a witch-hunt for all of the girls in Granite Falls who she believed were raped by Tyler. B.B. was mentioned as a possible candidate to bolster her daughter's allegations and [C.L.'s mother] brought B.B. to the Granite Falls police department.

Clerk's Papers (CP) at 164. Just before trial, defense counsel alerted the trial court that he planned to open the door to evidence of B.B.'s disclosure to C.L.:

> When we [the defense] talked to [C.L.], she stated that [B.B.] told her something to the effect of, [s]he told me Tyler tried to sleep with her or tried to touch her and that she tried to push him off.
>
> And then I asked [C.L.] specifically, Did [B.B.] say they had sex? And [C.L.] said no.
>
> . . .
>
> I expected . . . that [the State] would be asking [B.B.] some questions about her disclosure and what had happened that day with Tyler.
>
> I am essentially volunteering that I'm going to open the door as it relates to her disclosure to [C.L.].
>
> . . .
>
> I think the Court can see my strategy behind that, why I'm doing that.

RP (February 19, 2014) at 5-6 (emphasis added). Defense counsel expounded on this theory during closing argument:

> Why are they doing this? . . . Why would they lie? I don't know . . . . Here's my hypothesis. Tyler's account of what happened that night with [B.B.] is actually consistent with everybody who testified except [B.B.]. So if [B.B.] went up to his room and wanted to sleep there and he said, "No, I don't want you there. I just got done having sex with your sister." Kicks her out. He said she was upset. She was very upset. She was mad. She's mad at Tyler . . . . [I]s it plausible to think that [B.B.] would be upset that the man who continues to sleep with her sister rejected her? I don't know. I wasn't a teenage girl. The lie gets little traction. She says she tells her sister . . . . Her story is not getting traction with the person who is most likely to believe her, her sister. She tells her best friend, [C.L.], she doesn't remember when. They do everything together, they share secrets together, they spend time together. They get drunk together, they sneak out of houses. Who can hold Tyler accountable? . . . Look at the timing of these allegations. Look at the timing of the disclosure. [C.L.] alleges this happened on November 14th. What day did [B.B. disclose the details of

her rape]? November 30th, two weeks afterwards. Three or four days after the Thanksgiving that [C.L.] disclosed to [B.B.]. Within seven days, within a week, these disclosures are out. It could be coincidence and it could not. I don't know. I don't know their motive . . . . I'm not Perry Mason. I'm not Matlock. I'm not going to get them on the stand and break them down until they finally weepingly confess to a lie . . . That's not how this process works.

RP (February 24, 2014) at 167-69. Defense counsel continued, assuring the jury that even if they did not believe his hypothesis, they could still return a not guilty verdict because the victims' testimony was insufficient on its own:

> Even if you disagree with my theory and you think it's not helpful, that I'm full of garbage or my theory is at least full of garbage, you can still find Tyler not guilty. And the way you do that is because the State has not met its burden of proof. There is not enough evidence to prove that this young man raped those two young girls.
> . . .
> So what are the facts? Two girls, best friends, who do everything together say they were raped by the same man and they're the same amount of proof, none. Just their word. That is all.

RP (February 24, 2014) at 170-76. Defense counsel made the theory clear during closing argument: B.B. wanted revenge against Farrar-Breckenridge for spurning her sexual advances, so she and her best friend, C.L., manufactured false rapes allegations and coincidentally disclosed those allegations within a week of each other.

This conspiracy theory required comparing the two victims' narratives alongside one another in the same trial so as to highlight the suspicious nature of the "coincidence[s]" defense counsel relied on in closing argument. Because the record demonstrates that defense counsel rejected separate trials in furtherance of this strategy, Farrar-Breckenridge has failed to overcome the strong presumption that his attorney's decision was tactical. See Sutherby, 165 Wn.2d at 883.

Farrar-Breckenridge primarily relies on Sutherby. There, our Supreme Court held that counsel was ineffective when he failed to move for severance of child pornography charges from child molestation charges. Sutherby, 165 Wn.2d at 884. Farrar-Breckenridge argues that, as in Sutherby, there was no possible advantage in holding a single trial on all three counts of rape of a child in the third degree because "the evidence of the unrelated acts would not have been admissible at separate trials." Br. of Appellant, 15. Indeed, the Sutherby court noted that "[t]he State's argument suggesting a tactical choice presupposes that evidence of the possession of child pornography would have been allowed in any separate trial on the child rape and molestation charges, but . . . this is a debatable premise." Sutherby, 165 Wn.2d at 884.

But a joint trial on counts that could be severed does not necessarily lack any strategic advantage simply because some evidence would be inadmissible at separate trials. Although that may be a factor, the basis of the court's holding in Sutherby is that defense counsel was deficient when he failed to move for severance after the State indicated that it planned to use the child pornography evidence to show predisposition for molestation:

> There is no indication of any possible advantage to the defendant in having a joint trial on all charges, given the State's announced intent to use the pornography counts to show Sutherby's predisposition to molest children. Even the trial judge appeared to expect a severance motion because he asked at a pretrial hearing if severance was a possibility. We hold that counsel's failure to move for severance meets the deficiency prong.

Sutherby, 165 Wn.2d at 884. Because of the highly prejudicial nature of the charges in Sutherby and the State's announced intent to exploit that prejudice, there was no possible advantage to a joint trial. But, here, the record shows there was a tactical

advantage to a joint trial and defense counsel based his primary trial strategy on that advantage. Further, unlike in Sutherby, there is no indication that the State used any one count to improperly influence the jury's decision on another count. Under these circumstances, defense counsel's performance was not deficient.

### III. Prejudice

Farrar-Breckenridge's claim also fails under the prejudice prong. To demonstrate prejudice, Farrar-Breckenridge must show (1) a severance motion would likely have been granted, and (2) if severance had been granted, there is a reasonable probability the jury would not have found him guilty beyond a reasonable doubt. Sutherby, 165 Wn.2d at 884. We conclude that he can show neither.

#### A. Whether a severance motion would have been granted

Multiple offenses may be joined when they are "of the same or similar character, even if not part of a single scheme or plan." CR 4.3(a)(1). But joining multiple offenses may prejudice a defendant "if use of a single trial invites the jury to cumulate evidence to find guilt or infer a criminal disposition." State v. Russell, 125 Wn.2d 24, 62-63, 882 P.2d 747 (1994). To determine whether joinder results in prejudice to a defendant, a trial court must consider "(1) the strength of the State's evidence on each count; (2) the clarity of defenses as to each count; (3) court instructions to the jury to consider each count separately; and (4) the admissibility of evidence of the other charges even if not joined for trial." Russell, 125 Wn.2d at 63. Further, any residual prejudice must be weighed against the need for judicial economy. State v. Kalakosky, 121 Wn.2d 525, 539, 852 P.2d 1064 (1993). We conclude it is unlikely a severance motion would have been granted.

## 1. The strength of the State's evidence on each count

For this factor, the court need not consider the overall strength of the State's case. Rather, the question is whether the strength of the State's case on each count was similar. See Russell, 125 Wn.2d at 63. "When one case is remarkably stronger than the other, severance is proper." State v. MacDonald, 122 Wn. App. 804, 815, 95 P.3d 1248 (2004).

Here, the State presented similar cases on each count such that neither case was noticeably stronger than the other. The victims' testimony served as the primary evidence for each count. Both C.L. and B.B. testified to their experiences, and Farrar-Breckenridge testified disputing their accounts. No physical evidence supported either victim's testimony. No eyewitnesses corroborated either victim's account of what happened. Therefore, because the strength of the State's case was similar on each count, this factor weighs in favor of joinder.

## 2. The clarity of the defenses as to each count

This factor also weighed in favor of joinder because Farrar-Breckenridge's defense to each count was the same. "The likelihood that joinder will cause a jury to be confused as to the accused's defenses is very small where the defense is identical on each charge." Russell, 125 Wn.2d at 64. Farrar-Breckenridge concedes this factor because he presented identical defenses.

## 3. The court's instructions to the jury

This factor weighs in favor of joinder because the trial court instructed the jury to consider each count separately. Jury instruction 3 provides:

> A separate crime is charged in each count. You must decide each count separately. Your verdict on one count should not control your verdict on any other count.

CP at 99. This instruction adequately directed the jury to consider each count separately, and we presume that the jury followed the court's instructions. State v. Montgomery, 163 Wn.2d 577, 596, 183 P.3d 267 (2008) ("we should presume the jury followed the court's instructions absent evidence to the contrary.")

Farrar-Breckenridge argues that despite this instruction, he was nevertheless prejudiced because the trial court failed to instruct the jury that evidence of one crime could not be used to decide guilt for the other crime. He again relies on Sutherby, where the court found prejudice even though the trial court provided an identical instruction to the one given in this case. Sutherby, 165 Wn.2d at 885–86. But the court in Sutherby did not hold that the trial court's failure to include a limiting instruction prejudiced Sutherby. Rather, the court concluded that Sutherby was prejudiced by the State's improper argument despite the trial court's adequate instructions:

> Third, though the jury was instructed to decide each count separately, the State consistently argued that the presence of child pornography on Sutherby's computers proved he sexually abused his granddaughter, stating it "shows motive."

Sutherby, 165 Wn.2d at 885. Sutherby does not support the proposition that the lack of an additional limiting instruction is prejudicial.

Further, we note that Farrar-Breckenridge never requested the instruction he now contends was necessary to avoid prejudice. In Russell, the court concluded the trial court did not err when it denied a motion to sever under similar circumstances:

> The third factor to consider is whether the court properly instructed the jury to consider each count separately. The defense now claims that

-11-

the trial court should have instructed the jury to "decide separately what the evidence in the case shows about the crime." See United States v. Johnson, 820 F.2d 1065, 1071 (9th Cir. 1987). Since the defense never proposed such an instruction, however, and since the instruction it did propose is both the one that the trial court gave and a correct statement of the law, we find no error.

Russell, 125 Wn.2d at 66. Therefore, given the trial court's adequate instructions and Farrar-Breckenridge's failure to propose additional instructions, we cannot say the trial court would have granted a motion to sever.

### 4. The admissibility of other evidence if not joined

Farrar-Breckenridge primarily argues that severance would have been granted because the evidence of each count would be inadmissible in separate trials, and a single trial with all the evidence prejudiced the outcome.

But "[t]he fact that separate counts would not be cross admissible in separate proceedings does not necessarily represent a sufficient ground to sever as a matter of law." Kalakosky, 121 Wn.2d at 538. "Our primary concern is whether the jury can reasonably be expected to 'compartmentalize the evidence' so that evidence of one crime does not taint the jury's consideration of another crime." State v. Bythrow, 114 Wn.2d 713, 721, 790 P.2d 154 (1990) (quoting Johnson, 820 F.2d at 1071). In Kalakosky, the court held that the trial court did not abuse its discretion when it denied a motion to sever five separate counts of rape even though much of the evidence of the rapes would have been inadmissible in separate trials on each count. Kalakosky, 121 Wn.2d 536-38. The court concluded "it was not a particularly complicated task to keep the testimony and evidence of the five crimes separate" because each victim "described quite a different episode even though there was much in the rapist's methods that was

-12-

the same." Kalakosky, 121 Wn.2d 537. Further, the trial court instructed the jury to consider each count separately. Kalakosky, 121 Wn.2d at 538.

Like in Kalakosky, the jury here could compartmentalize the different alleged acts. Both victims testified, describing different sexual acts that occurred almost a year apart. And, as mentioned above, the jury was instructed to consider each count separately. Under these circumstances, we conclude that the potential inadmissibility of some evidence at separate trials did not prevent joinder.

### 5. Judicial economy

Finally, we note that judicial economy considerations supported joinder here. See, e.g., Kalakosky, 121 Wn.2d at 537 (judicial economy may be a factor when considering whether to sever separate counts).

Because Farrar-Breckenridge and both victims socialized in the same circle of friends, many of the witnesses would likely have been required to testify at both trials, had the counts been severed. For example, C.L. and B.B. would have testified at both trials because they disclosed to each other and C.L. was at Farrar-Breckenridge's house the night B.B. was raped. Similarly, Farrar-Breckenridge's brother would probably have testified in both trials because he was also present at the house the night B.B. was raped and C.L. disclosed to him. C.L.'s mother also would have testified at both trials given her relationship to both victims. Given the other factors above, the need for judicial economy outweighed the relatively low risk of prejudice to Farrar-Breckenridge.

Although the trial court had the discretion to grant severance, we conclude the above factors, taken together, weigh in favor of joinder. Farrar-Breckenridge has failed

-13-

to show a likelihood that the trial court would have granted a severance motion under the circumstances present here.

B. Whether the outcome of separate trials would have been different

Even if the trial court had granted severance, Farrar-Breckenridge cannot show that the outcome would have been different. We addressed a similar circumstance in State v. Warren, 55 Wn. App. 645, 779 P.2d 1159 (1989), and found no prejudice. In Warren, the defendant was charged with one count of attempted second degree rape and one count of first degree statutory rape. Warren, 55 Wn. App. at 646-47. The counts arose from incidents with two different victims. Warren, 55 Wn. App. at 647. On appeal, Warren argued he was denied effective assistance of counsel when his attorney failed to move to sever the two counts. We affirmed the convictions, concluding that because the defendant and the victims testified, it was unlikely two separate juries would have come to a different conclusion:

> Even if it is assumed, however, that severance would have been granted, appellant was not prejudiced by counsel's alleged deficient performance. Given the nature of the charges, the State's evidence was relatively strong. Both of the victims testified, were subject to cross examination, and gave concise accounts of Warren's conduct. In his defense, Warren took the stand and denied the charges outright. The jury thus had a full opportunity to assess the demeanor and credibility of all the parties. We can find no basis to conclude that the jury might reasonably have performed this assessment differently had the charges been tried separately.

Warren, 55 Wn. App. at 655.

The same is true here. Both C.L. and B.B. testified and were subject to cross-examination. Farrar-Breckenridge testified and denied the allegations. The jury here had a full opportunity to assess the credibility of all the witnesses. Farrar-Breckenridge

-14-

failed to identify any specific reason why separate juries would have performed this assessment differently.

## CONCLUSION

Because Farrar-Breckenridge cannot show either that his defense counsel was deficient or prejudice, we conclude he was not deprived of effective assistance of counsel. We affirm the judgment and sentence.

WE CONCUR: