# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Personal Restraint of | No. 75381-9-I |
| GARY TIMOTHY MCCALLUM, | DIVISION ONE |
| Petitioner. | UNPUBLISHED OPINION |
| | FILED: January 16, 2018 |

LEACH, J. — Gary McCallum collaterally challenges his 2014 conviction for assault in the third degree. He contends that his trial counsel provided ineffective assistance by failing to pursue a self-defense theory, failing to request a no-duty-to-testify instruction, failing to object to testimony, and committing other errors. Because McCallum cannot show that trial counsel's conduct fell below an objective standard of reasonableness, his claim fails. We deny McCallum's personal restraint petition (PRP).

## BACKGROUND

Michael Daniels and his wife, Loni Daniels, lived together in a 36-foot fifth wheel recreational vehicle (RV). Loni's daughter, Mary McCallum, is married to the petitioner.[1] Loni gave Mary up for adoption at birth. Loni and Mary maintained

---

[1] Loni Daniels shares Michael Daniels' last name. Mary and Tawnya McCallum share Gary McCallum's last name. To avoid confusion, we refer to Loni, Mary, and Tawnya by their first names.

infrequent contact throughout Mary's life, but they had a difficult relationship. They had not seen each other in over a year when McCallum assaulted Daniels.

One night, after 2:00 a.m., when Loni was away, McCallum, Mary, and McCallum's sister, Tawnya McCallum, arrived at the Danielses' RV. Daniels invited them in. After a few minutes, Mary and Tawnya left the RV, leaving McCallum and Daniels alone. McCallum began to discuss a reconciliation between Mary and Loni. Daniels testified that when he said he could do nothing about the situation between Mary and Loni, McCallum became agitated. So Daniels asked McCallum to leave.

According to Daniels, McCallum reacted by pushing Daniels's shoulder, causing Daniels to hit his head on the wood trim on the back of the couch. Daniels then pushed McCallum into the entertainment center. According to Daniels, McCallum then hit him. Daniels admits that he did not see what hit him but testified that he saw McCallum coming toward him. He testified that he believes McCallum punched him because nothing else in the area could have hit him that hard. McCallum's blow broke Daniels's nose. In addition, the force of the impact broke the lens of Daniels's glasses, and a shard of the lens went into Daniels's eye.

After the altercation, McCallum ran out the door. A few seconds later, Daniels heard a breaking window. Daniels discovered pieces of a ceramic owl in the RV that had been in a planter outside the RV.

Detective Brian Scott Wells investigated the case. Detective Wells testified that when he first spoke with McCallum, McCallum denied any knowledge of an

altercation. Later that day, McCallum contacted Detective Wells and told him that he had gone to Daniels's RV with Mary and Tawnya and that McCallum may have insulted Daniels's intelligence. According to McCallum, Daniels then struck McCallum on the lip. McCallum maintained that he left without hitting Daniels.

The State charged McCallum with second degree assault and third degree malicious mischief. At trial, the defense asserted a general denial, claiming that the State had failed to prove intent. The defense called no witnesses. Neither McCallum, nor Mary, nor Tawnya testified at trial.

The jury convicted McCallum of assault in the second degree (RCW 9A.36.021) and acquitted him of the malicious mischief charge. McCallum appealed his conviction, challenging the trial court's failure to give an adverse inference instruction based on McCallum's failure to testify.[2] We affirmed.[3]

McCallum filed this PRP, asserting an ineffective assistance of counsel claim. He supported his PRP with his own affidavit plus affidavits from his trial counsel, Mary, Tawyna, and an experienced criminal defense attorney.

ANALYSIS

McCallum claims his trial counsel was ineffective for several reasons. Because he does not show that his counsel's performance fell below an objectively reasonable standard of care, his claim fails.

---

[2] State v. McCallum, No. 71654-9-I, slip op. at 1 (Wash. Ct. App. June 29, 2015) (unpublished), http://www.courts.wa.gov/opinions/pdf/716549.pdf.
[3] McCallum, No. 71654-9-I, slip op. at 5.

Standard of Review

To obtain collateral relief by a PRP, a defendant must show either an error of constitutional magnitude that gives rise to actual prejudice or a nonconstitutional error that "'inherently results in a complete miscarriage of justice.'"[4]

Claims of ineffective assistance present mixed questions of law and fact, which this court reviews de novo.[5] This court examines the entire record to decide whether the defendant received effective representation and a fair trial.[6] To succeed in an ineffective assistance claim, the defendant must show that his attorney's performance fell below an objective standard of reasonableness and that the deficient performance prejudiced him.[7] If a defendant submitting a PRP meets this burden, then he has necessarily met his burden to show the actual and substantial prejudice the PRP standard requires.[8]

This court approaches an ineffective assistance of counsel claim with a strong presumption that counsel provided effective representation.[9] A petitioner can "'rebut this presumption by proving that his attorney's representation was unreasonable under prevailing professional norms and that the challenged action

---

[4] In re Pers. Restraint of Grantham, 168 Wn.2d 204, 212, 227 P.3d 285 (2010) (quoting In re Pers. Restraint of Isadore, 151 Wn.2d 294, 298, 88 P.3d 390 (2004)).
[5] In re Pers. Restraint of Fleming, 142 Wn.2d 853, 865, 16 P.3d 610 (2001).
[6] State v. Hicks, 163 Wn.2d 477, 486, 181 P.3d 831 (2008).
[7] Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).
[8] In re Pers. Restraint of Crace, 174 Wn.2d 835, 846-47, 280 P.3d 1102 (2012).
[9] In re Pers. Restraint of Davis, 152 Wn.2d 647, 673, 101 P.3d 1 (2004).

was not sound strategy.'"[10] This court evaluates the reasonableness of counsel's performance from "'counsel's perspective at the time of the alleged error and in light of all the circumstances.'"[11] We examine an attorney's action or inaction according to what that attorney knew and what was reasonable at the time the attorney made her choices.[12] To satisfy the prejudice prong, the defendant must show a reasonable probability that the result of the trial would have been different without the attorney's deficient performance.[13] "A reasonable probability is a probability sufficient to undermine confidence in the outcome."[14] If we conclude that McCallum fails to establish either prong of the test, we need not inquire further.[15]

## Self-Defense

Primarily, McCallum contends that his counsel should have pursued a self-defense theory. He specifically contends that his counsel had no legitimate tactical reason for failing to present evidence of this defense at trial.[16]

---

[10] Davis, 152 Wn.2d at 673 (quoting Kimmelman v. Morrison, 477 U.S. 365, 384, 106 S. Ct. 2574, 91 L. Ed. 2d 305 (1986)).

[11] Davis, 152 Wn.2d at 673 (quoting Kimmelman, 477 U.S. at 384).

[12] Davis, 152 Wn.2d at 722 (citing Hendricks v. Calderon, 70 F.3d 1032, 1036 (9th Cir.1995)).

[13] Strickland, 466 U.S. at 694.

[14] Strickland, 466 U.S. at 694.

[15] State v. Hendrickson, 129 Wn.2d 61, 78, 917 P.2d 563 (1996).

[16] Much of McCallum's petition is devoted to explaining the circumstances at the law firm that McCallum hired to defend him. McCallum hired the Law Office of Heidi Hunt to represent him. Cassandra Lopez de Arriaga, who worked for those law offices, represented McCallum at trial. In her affidavit, Lopez de Arriaga explains that at the time she was representing McCallum, Hunt's offices were in a state of chaos. McCallum also submitted documentation about Hunt's subsequent disbarment. Lopez de Arriaga explains that she was "extremely busy trying to

McCallum's trial counsel instead asserted a general denial defense. Counsel argued that the State had failed to prove beyond a reasonable doubt that McCallum intended to assault Daniels. "Generally, choosing a particular defense is a strategic decision 'for which there is no correct answer, but only second guesses.'"[17] "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."[18] McCallum's trial counsel now claims that she believes that with the defense she presented, McCallum had no reasonable chance of acquittal. But outside of the distorting effects of hindsight, we cannot say that at the time of trial, an attorney could not have looked at the two defense options and reasonably chosen to pursue a general denial.[19]

McCallum presents by affidavit some evidence he claims would have supported a self-defense theory. Specifically, he claims that Daniels initiated the

---

manage all of Ms. Hunt's clients" and that she got very little sleep during that period.

These facts are not relevant to our decision. First, Hunt's misconduct as an attorney and subsequent disbarment do not influence our decision because we have no evidence that Hunt worked on McCallum's case. And Lopez de Arriaga's claims that the work conditions affected her performance do not influence our decision because in deciding ineffective assistance claims we use an objective standard.

[17] Davis, 152 Wn.2d at 745 (quoting Hendricks, 70 F.3d at 1041).
[18] Strickland, 466 U.S. at 689.
[19] State v. Piche, 71 Wn.2d 583, 590, 430 P.2d 522 (1967) ("Counsel may, as the trial progressed, have deemed it wise at the time to avoid issues which then seemed frivolous and insubstantial on a sound tactical theory that to bring them up would create an inference that the whole defense was frivolous and insubstantial and might expose the defendant to a devastating rebuttal.").

altercation by punching McCallum. He states, "I defended myself by putting my hands in front of me and striking Mr. Daniels." Yet, other evidence exposes the theory's weakness. In particular, McCallum's claim that he struck Daniels in self-defense is inconsistent with his previous statements to the police, where he first denied any altercation occurred and later denied striking Daniels at all. In addition, Daniels testified that McCallum was the initial aggressor and pushed Daniels, causing him to hit the back of his head.

> [I]n general, the right of self-defense cannot be successfully invoked by an aggressor or one who provokes an altercation, unless he or she in good faith first withdraws from the combat at a time and in a manner to let the other person know that he or she is withdrawing or intends to withdraw from further aggressive action.[20]

Evidence of the facts as McCallum now represents them in his petition would have been inconsistent with Daniels's testimony, as well as McCallum's statement to the police. In fact, the version of the facts he presents in his petition is his third version of what happened. By contrast, the theory that defense counsel chose was more consistent with McCallum's statements to the police and Daniels's own testimony. Thus, in light of the conflicting evidence at the time of trial, an attorney could reasonably decide that McCallum's best defense was a general denial.

McCallum contends that his trial counsel's decision cannot be reasonable because she failed to thoroughly investigate the self-defense theory. "In order to make the adversarial process meaningful, defense counsel has a duty to

---

[20] State v. Riley, 137 Wn.2d 904, 909, 976 P.2d 624 (1999).

investigate all reasonable lines of defense."[21] Defense counsel's failure to pursue evidence corroborating a defense can be constitutionally deficient performance.[22] But that does not mean that counsel must interview every conceivable witness.[23] "At the least, a defendant seeking relief under a 'failure to investigate' theory must show a reasonable likelihood that the investigation would have produced useful information not already known to defendant's trial counsel."[24]

McCallum contends that counsel's failure to interview Tawnya or call Mary or Tawnya as witnesses was not a reasonable strategic decision. But nothing in the record suggests that they witnessed the incident. Although they were present for the incident, they were outside the RV and could not have seen the altercation unfold. Thus, even if Tawyna and Mary had testified, they would not have provided substantial evidence to support the self-defense theory. Because Tawyna and Mary did not witness the altercation, trial counsel could reasonably decide that they could not have corroborated McCallum's story in a significant way.

McCallum asserts that the court should not speculate about what trial counsel's motives might have been as there is no evidence that her choice of defenses was made for a strategic reason.[25] But we need not speculate about counsel's actual motives because decisions about what defense theory to pursue

---

[21] Davis, 152 Wn.2d at 744.
[22] Davis, 152 Wn.2d at 739.
[23] Davis, 152 Wn.2d at 739.
[24] Davis, 152 Wn.2d at 739.
[25] See State v. Warren, 55 Wn. App. 645, 652, 654, 779 P.2d 1159 (1989) (declining to speculate about defense counsel's tactical reasons for not seeking to sever trials).

are strategic decisions and if we presume that counsel acted reasonably we can conceive of a tactical reason for the decision.[26]

In sum, after evaluating the relative merits of a general denial and a self-defense theory, reasonable defense counsel could have concluded that the general denial was a stronger strategy.

### Jury Instruction

McCallum also claims that his counsel should have requested a no-duty-to-testify instruction. The United States Supreme Court held in Carter v. Kentucky[27] that a trial court must instruct the jury that it may not draw an adverse inference from the defendant's failure to testify when the defendant requests it do so. This rule protects a defendant's Fifth Amendment right against compulsory self-incrimination.[28] But some defendants do not want this instruction given because they believe it highlights their silence.[29] Thus, the use of the instruction is a tactical choice.

With his PRP, McCallum submitted an affidavit in which his counsel states, "I always submit [a Carter] instruction, as a matter of practice. There was no strategic reason for failing to propose this instruction." But when deciding whether an attorney's performance was deficient, we employ an objective standard.[30]

---

[26] Davis, 152 Wn.2d at 745.

[27] 450 U.S. 288, 299-303, 101 S. Ct. 1112, 67 L. Ed. 2d 241 (1981); see also State v. Pavelich, 153 Wash. 379, 380, 279 P. 1102 (1929).

[28] Carter, 450 U.S. at 300-03.

[29] State v. Dauenhauer, 103 Wn. App. 373, 376, 12 P.3d 661 (2000); State v. King, 24 Wn. App. 495, 500, 601 P.2d 982 (1979).

[30] Strickland, 466 U.S. at 687-88.

Because we can conceive of a strategic reason for not requesting a <u>Carter</u> instruction, defense counsel's performance was not objectively unreasonable for failing to request a <u>Carter</u> instruction.

<u>Failure To Object to Trial Testimony</u>

Next, McCallum contends that his counsel was ineffective for failing to object to testimony at trial. "The decision of when or whether to object is a classic example of trial tactics. Only in egregious circumstances, on testimony central to the State's case, will the failure to object constitute incompetence of counsel justifying reversal."[31]

McCallum specifically contends that counsel's performance was deficient when she failed to object to testimony that suggested McCallum had prior contact with law enforcement. At trial, when the State asked Detective Wells about his investigation and specifically how he got in contact with Tawnya, Detective Wells stated, "I believe there was a case report from earlier in 2009 that was associated with Ms. McCallum. That's how I [w]as able to kind of figure out who she was and get a hold of her." When asked what attempts he made to contact McCallum, Detective Wells stated,

> Essentially the same thing I had done to get ahold of [Tawnya], I did so with the name Gary McCallum, located some older 2009 case reports. I believe they were 2009. In one of those reports, Mr. McCallum had completed a written statement and on that statement it listed his occupation as Elite Painting Services.

---

[31] <u>State v. Madison</u>, 53 Wn. App. 754, 763, 770 P.2d 662 (1989).

McCallum claims this evidence was prejudicial—and should have been excluded under ER 404(b)—because it tells the jury that McCallum had multiple earlier contacts with law enforcement. The State counters that an objection could have highlighted this part of the testimony, required the State to defend its line of questioning, and potentially revealed more unfavorable information. Indeed, this passing mention of police contact does not indicate whether McCallum was a suspect or a witness or the nature of the police interaction. The circumstances here are not egregious, and an objection might have highlighted the testimony for the jury.

In a footnote, McCallum also claims that counsel was ineffective for failing to object to (1) the lack of foundation for statements that the McCallums were intoxicated, (2) the lack of foundation for statements that the owl had been used to break the window, (3) hearsay testimony about the cost of repairing the window, and (4) the relevance and prejudicial nature of a statement that Tawnya had a prior case report in the law enforcement database. McCallum presents no argument that these decisions were not made for strategic reasons or that they prejudiced this case. McCallum does not rebut the presumption that counsel's inaction on any of these occasions was a reasonable tactical choice.

### Failure To Interview Dr. Roseberry

Next, McCallum contends that his counsel was ineffective for failing to interview Dr. J. Michael Roseberry before trial. The State called Dr. Roseberry, who examined Daniels in the emergency room, to testify about the night of the

assault. Counsel objected to testimony about a medical record Dr. Roseberry had created. The court asked, "Did anybody interview the doctor before now?" Counsel did not respond to this question. McCallum takes this to mean that she did not interview Dr. Roseberry.

The State contends that the trial court's unanswered question is not evidence that counsel failed to interview Dr. Roseberry before trial. McCallum responds that the most reasonable interpretation of the record is that counsel did not interview Dr. Roseberry. But we agree with the State that in the context of this exchange, we cannot assume the inference McCallum asks us to draw, that no pretrial interview occurred. Counsel's affidavit does not state that she did not interview the doctor. Nor does McCallum provide a declaration from the doctor that counsel did not interview him. McCallum has not, therefore, shown that defense counsel was ineffective for failing to interview Dr. Roseberry.

## Failure To Impeach Daniels

Finally, McCallum contends that counsel's performance was ineffective because she failed to impeach Daniels after he denied that McCallum could have bounced off the entertainment center and hit him unintentionally. During cross-examination, defense counsel asked Daniels, "When we met [at the police department] before, do you remember telling me that you didn't see a fist, you didn't see anything come at you, but it was possible after you pushed him he just bounced onto you?" Daniels replied, "I don't remember telling you that."

McCallum contends that this testimony should have prompted counsel to impeach Daniels. He suggests that she could have used a transcript of the conversation, an interview report, or an investigator present at the interview to impeach him. But McCallum does not show that counsel had access to any such materials. Because McCallum does not show that counsel had the ability to impeach Daniels, he does not show that counsel's performance was deficient for failing to do so.

## CONCLUSION

Because McCallum does not show that his trial counsel's performance fell below an objectively reasonable standard of care, his ineffective assistance claim fails. We deny McCallum's petition.

_Leach, J._

WE CONCUR:

_Dwyer, J._                    _Appelwick, J._