# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,

        Respondent,

v.

NICK IN YOUNG PARK,

        Appellant.

No. 73661-2-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: October 19, 2015

TRICKEY, J. — A jury found Nick In Young Park guilty of several counts of cyberstalking, two counts of violation of a court order, and one count of telephone harassment. He appeals his convictions and sentence, alleging that there was no affirmative showing that he waived his right to remain silent at trial, that he received ineffective assistance of counsel, and that the trial court abused its discretion when imposing an exceptional sentence. Finding no error, we affirm.

## FACTS

Nick Park and Naree McCormick were in a romantic relationship in 2005. The relationship deteriorated when Park began yelling, slapping, and threatening McCormick. He started stalking her after she broke up with him. McCormick also realized that Park had opened a credit card account in her name. Park was convicted of identity theft for opening the credit card. The court then ordered Park not to have any contact with McCormick. Park violated that no contact order in 2008.

In March 2013, McCormick started receiving Facebook messages from an account under the name "Daniel Kim."[1] At first, she thought Daniel was an old coworker, but she

---

[1] Report of Proceedings (RP) (Jan. 15, 2014) at 86, 89-90.

soon suspected that Kim was Park. Kim made comments about her background, boyfriend, daughter, and workplace. He told McCormick that she knew him "very well."[2] He said he would have a "surprise" for her, "[a] big bang."[3]

Several other women received Facebook messages from Kim's account, Park's account, and e-mails and Facebook messages from a "Zach Baughman."[4] Kim, Baughman, and Park sent similar messages to these women that included references to pantyhose or nylons, the word legs spelled "leggs," and unusual phrases such as "great pair of looking leggs."[5] Some of the messages contained death threats, sexually explicit content, and implications that the sender knew where the recipient lived and worked. Kim sent someone Park's cell phone number in a Facebook message.

Park also had a relationship with a woman named Kristine Felt. Park called Felt repeatedly from jail, despite her request that he stop calling her.[6]

In January 2014, the State charged Park with two counts of violation of a court order, one count of telephone harassment, one count of harassment, and six counts of cyberstalking. Before trial, the State and Park stipulated that Park's prior convictions for stalking and violations of a no contact order would be admissible as predicate offenses for the cyberstalking and violations of a no contact order charges. They agreed that his other prior convictions would not be admissible unless Park testified, at which point they would be admissible for impeachment purposes. Park was the last witness to testify.

---

[2] RP (Jan. 15, 2014) at 94.
[3] RP (Jan. 15, 2014) at 93.
[4] RP (Jan. 21, 2014) at 284, 286-87; RP (Jan. 15, 2014) at 122; RP (Jan. 16, 2014) at 212.
[5] RP (Jan. 16, 2014) at 212; RP (Jan. 21, 2014) at 278, 281-82.
[6] Without viewing the exhibits themselves (which were not included in the record) it is impossible to count the number of telephone calls, but Kitsap County Sheriff's Deputy Britney Gray's testimony indicates that they were numerous. The State estimates that there were over 100 telephone calls from Park to Felt, while Park was in jail.

2

The jury convicted Park on all charges, except one charge of cyberstalking. At sentencing, the State recommended that the court impose an exceptional sentence based on the free crimes principle. Park's trial counsel did not file a response in opposition to the State's recommendation.[7]

The trial court imposed an exceptional sentence of 300 months, commenting on the number of victims, Park's apparent lack of remorse, and that having all the sentences run concurrently would be a "slap in the face" to some of the victims.[8] Running all the sentences concurrently would have resulted in a 60 month sentence. Instead, the court ran the sentences for violations of a court order, harassment, and telephone harassment consecutively to the cyberstalking charges and each other. The court's finding of facts and conclusions of law indicated that the basis for the exceptional sentence was that the "defendant's high offender score results in some of the current offenses going unpunished."[9]

## ANALYSIS

I.   Right to Remain Silent

Park argues for the first time on appeal that the trial court allowed him to testify without ensuring that he understood his right to remain silent, in violation of his right against self-incrimination, guaranteed to him by both the Washington and United States Constitutions. WASH. CONST. art. I, § 9; U.S. CONST. amend V. He contends there must be some showing, in the record, that he affirmatively waived his right to remain silent.

---

[7] The clerk's papers did not include a response by trial counsel, and no one mentioned one during the sentencing hearing.
[8] RP (Feb. 28, 2014) at 520; Clerk's Papers (CP) at 298.
[9] CP at 294.

3

Because Park's counsel, not the court, was responsible for advising him of his right to testify and his right to remain silent, we hold that there was no error.

A. Standard of Review

We may consider issues not initially raised in the trial court if the issue presents a "manifest error affecting a constitutional right." RAP 2.5(a)(3).

B. Proof of Waiver of Fifth Amendment Right before Testifying

At trial, a defendant must choose between exercising his fundamental right to testify and his fundamental right to remain silent. The Fifth Amendment gives a defendant the right to remain silent and the Sixth Amendment's right to call witnesses, combined with the Fourteenth Amendment's right to due process, give a defendant the right to testify. U.S. CONST. amend. V; Rock v. Arkansas, 483 U.S. 44, 50-52, 107 S. Ct. 2704, 97 L. Ed. 2d 37 (1987). A waiver of either right must be knowing, but it need not be "on-the-record." State v. Thomas, 128 Wn.2d 553, 559, 910 P.2d 475 (1996).

Instead, Washington courts rely on trial counsel to advise testifying defendants of their testimonial rights. When reviewing cases where a criminal defendant has not exercised his right to testify, the Washington State Supreme Court has held that it is "counsel's responsibility, not the judge's, to advise the defendant whether or not to testify." Matter of Pers. Restraint of Lord, 123 Wn.2d 296, 317, 868 P.2d 835, decision clarified sub nom. In re Pers. Restraint Petition of Lord, 123 Wn.2d 737, 870 P.2d 964 (1994); see also Thomas, 128 Wn.2d at 559 ("The right to remain silent is waived by the act of taking the stand."). The court has discouraged trial courts from inquiring into a defendant's decision to testify because it might "appear to encourage the defendant to invoke or waive his Fifth Amendment rights." Lord, 123 Wn.2d at 317. Thus, the trial court did not err.

4

II.    Ineffective Assistance of Counsel

Park alleges that trial counsel's performance was ineffective overall, and in four specific ways, counsel did not (1) object to the admission of prior bad acts; (2) move to sever unrelated charges; (3) object to evidence introduced on redirect that was outside the scope of cross-examination; and (4) present a psychological evaluation or other mitigating evidence at sentencing. Because each of Park's trial counsel's decisions could have been a reasonable trial tactic, Park did not receive ineffective assistance of counsel.

A. Effective Assistance of Counsel and Standard of Review

The Sixth Amendment guarantees criminal defendants the right to the assistance of counsel. Strickland v. Washington, 466 U.S. 668, 684, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To prevail on a claim of ineffective assistance, the defendant must show that (1) trial counsel's performance "fell below an objective standard of reasonableness" and (2) that the defendant was prejudiced by trial counsel's deficient performance. State v. Sutherby, 165 Wn.2d 870, 883, 204 P.3d 916 (2009). To establish prejudice, a defendant must show by "a reasonable probability that, but for counsel's unprofessional errors, the outcome of the proceeding would have been different." State v. Nichols, 161 Wn.2d 1, 8, 162 P.3d 1122 (2007). The defendant must show that there was no "legitimate strategic or tactical reason" to explain trial counsel's act or failure to act. Sutherby, 165 Wn.2d at 883. "[E]xceptional deference must be given when evaluating counsel's strategic decisions." State v. McNeal, 145 Wn.2d 352, 362, 37 P.3d 280 (2002). If a party fails to satisfy either the deficiency or the prejudice prong, a reviewing court need not consider the other. State v. Foster, 140 Wn. App. 266, 273, 166 P.3d 726 (2007). This standard applies to each allegedly ineffective act. We review claims of ineffective assistance of

counsel de novo because the claims present mixed issues of fact and law. Sutherby, 165 Wn.2d at 883. We may consider a claim of ineffective assistance of counsel raised for the first time on appeal because it is an issue of constitutional magnitude. Nichols, 161 Wn.2d at 9.

### B. Failure to Object to Evidence of Prior Bad Acts

Park contends that counsel was ineffective in failing to object to McCormick's testimony about the specifics of his prior convictions for stalking and violation of a court order. Prior to trial, the parties stipulated that Park's prior convictions for stalking and violation of no contact orders were admissible as predicate offenses.[10] The court agreed to read the abbreviated account of his convictions to the jury at the close of the State's case.

The parties' pretrial stipulation to the admissibility of Park's convictions for stalking and violation of a court order as predicate offenses does not limit the State's ability to introduce the information for another purpose.[11] See Old Chief v. United States, 519 U.S. 172, 190, 117 S. Ct. 644, 136 L. Ed. 2d 574 (1997) (State may seek admissibility of evidence related to prior crimes to show motive or identity, even if defendant has stipulated to prior convictions); State v. Teal, 117 Wn. App. 831, 844, 73 P.3d 402 (2003), aff'd, 152 Wn.2d 333, 96 P.3d 974 (2004) (allowing State to introduce evidence of defendant's crimes of dishonesty to *impeach* defendant, in a case where those crimes were predicate offenses and defendant offered to stipulate to the prior convictions).

---

[10] The cyberstalking charges required a previous conviction for some harassment crime. The violation of a court order charges required two prior convictions for violation of a court order.

[11] These stipulations for convictions for predicate offenses protect the defendant from having his prior convictions discussed at length as part of proving the State's case. The State actually objects to these stipulations but is bound by law to accept them.

While the fact of the prior convictions themselves was all that was necessary for their proof as predicate offenses, the details of the stalking and violation of a no contact order convictions were relevant for other purposes. Usually, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." ER 404(b). However, evidence of prior bad acts is admissible if the evidence is used for a different purpose, such as proving motive, intent, plan, or identity. ER 404(b). The State alleged, and Park denied, that Park was Daniel Kim.[12] McCormick's history with Park, including the basis of her fear of him, is probative of Park's motive to send the harassing messages under Kim's name, and how McCormick identified Kim as Park.[13] See State v. Powell, 126 Wn.2d 244, 259, 893 P.2d 615 (1995) ("[M]otive goes beyond gain and can demonstrate an impulse, desire, or any other moving power which causes an individual to act."). Thus, the evidence was admissible as proof of identity and motive.

Park's trial counsel could reasonably have chosen not to object to McCormick's testimony about Park's prior stalking behavior and violation of a court order because she believed it was admissible. Trial counsel's decision to object or not to object to evidence is a "classic example" of trial tactics. State v. Madison, 53 Wn. App. 754, 763, 770 P.2d 662 (1989). This court will only reverse a conviction based on "failure to object" when there are "egregious circumstances." Madison, 53 Wn. App. at 763. Further, even if the court would have sustained an objection by Park's counsel, Park has not shown prejudice.

---

[12] The State made the argument during closing statements. Park denied he had set up a Facebook account as Daniel Kim during his testimony.

[13] Kim knew details about McCormick's life, including information about her employment, boyfriend (now husband), daughter, and background. He also claimed that McCormick knew him and would recognize him. McCormick testified that she began to suspect Kim was Park based on that knowledge.

The evidence of prior bad acts, especially coming from the very first witness, had the potential to negatively influence the jury's impression of Park throughout the trial. However, the admissible evidence against Park was very strong. Park has not shown that there is a reasonable probability that the outcome of the trial would have been different if his attorney would have objected to this evidence.

Park's trial counsel could also have reasonably decided not to object to McCormick's testimony about Park's identity theft because she believed evidence would be admissible by the end of the trial. Evidence of a witness's prior conviction for a crime involving dishonesty is admissible to impeach that witness. ER 609(a); State v. Ray, 116 Wn.2d 531, 545, 806 P.2d 1220 (1991) (holding that "crimes of theft involve dishonesty and are *per se* admissible for impeachment purposes under ER 609(a)(2)"). Both parties agreed that Park's convictions for crimes of dishonesty would be admissible only if Park decided to testify. Park had not announced that he would testify when McCormick discussed Park opening a credit card account in her name.[14] Therefore, the introduction of this evidence was premature, and the court would have sustained an objection by trial counsel.

But, Park's attorney could have made the strategic choice not to call attention to the evidence by objecting to it. Madison, 53 Wn. App. at 763 (holding that failure to object will only be ineffective assistance of counsel "in egregious circumstances, on testimony central to the State's case"). Further, Park did eventually testify, so the State could have

---

[14] It was not until a day after McCormick's testimony that trial counsel indicated to the court that Park would testify. However, McCormick's details about Park opening a credit card account in her name were in the middle of a line of questioning about the admissible stalking and violation of a court order convictions. The State's question was about no contact orders. Trial counsel would not have had reason to object to the question before the answer was given, and may have made a choice not to call attention to the evidence by objecting afterward.

introduced this evidence to impeach his credibility. Park has not shown that trial counsel was deficient for failing to object to the testimony of his prior bad acts, so we need not examine whether there was prejudice. Thus, trial counsel's acts here do not support a claim of ineffective assistance of counsel.

## C. Failure to Move to Sever Unrelated Charges

Park argues that counsel was ineffective because she did not move to sever the telephone harassment charge from the other charges. He contends that he was prejudiced because the evidence for the telephone harassment charge was much stronger than the evidence for some of the cyberstalking charges. We disagree. Park has not shown that the trial court would have granted such a motion and, even if it would have, Park has not shown that it would have made a difference.

To prevail on a claim that counsel was ineffective in failing to sever charges, the defendant must show: (1) that the motion would have been granted, and (2) that there is a "reasonable probability" that the outcome would have been different. State v. Warren, 55 Wn. App. 645, 653-54, 779 P.2d 1159 (1989) (internal quotation marks) (citation omitted). When deciding whether to sever charges, the court first determines if there is the "potential for prejudice," and then whether that prejudice is offset by other factors. Warren, 55 Wn. App. at 654-55. That prejudice may exist "when there is a risk that the jury will use the evidence of one crime to infer the defendant's guilt for another crime or to infer a general criminal disposition." Sutherby, 165 Wn.2d at 883. But, trial courts will not sever the charges if that risk is offset because of:

> (1) the strength of the State's evidence on each count; (2) the clarity of defenses as to each count; (3) court instructions to the jury to consider each count separately; and (4) the admissibility of evidence of the other charges even if not joined for trial.

9

State v. Russell, 125 Wn.2d 24, 63, 882 P.2d 747 (1994).

Trial counsel's failure to move to sever charges was held to be ineffective when the evidence for one of the crimes was much stronger than the other. Sutherby, 165 Wn.2d at 884. In Sutherby, the defendant was charged with both child molestation and possession of child pornography. 165 Wn.2d 870, 884, 204 P.3d 916 (2009). The pornography evidence, which was much stronger than the molestation evidence, would likely have been inadmissible in the child molestation case. Sutherby, 165 Wn.2d at 885-86. The court held that the jury might have relied on the pornography evidence to convict the defendant of molestation. Sutherby, 165 Wn.2d at 885-86.

Conversely, it was not an abuse of discretion for the trial court to deny a defendant's motion for severance when the potential for prejudice was offset by other factors. State v. Bythrow, 114 Wn.2d 713, 723, 790 P.2d 154 (1990). In Bythrow, the court held that evidence of one of the crimes would not have been admissible in a trial of the other. 114 Wn.2d 713, 720, 790 P.2d 154 (1990). However, the court held that there was no prejudice or that any prejudice was offset by the proper jury instructions, short trial, simplicity of the issues, and overall strength of the evidence. Bythrow, 114 Wn.2d at 720-23.

Here, trying the telephone harassment charges with the cyberstalking charges had the potential to prejudice Park. The evidence of telephone harassment, including a recording of the victim yelling at Park to stop harassing her, would likely have been inadmissible in the cyberstalking charges. It might have influenced the jury's belief that Park was the person who sent the harassing Facebook messages.

However, even if there was some potential for prejudice, the court did not need to

sever the trials because other factors offset that prejudice. The State had strong evidence against Park for each of the charges for which he was found guilty. Park's defenses were not contradictory. And, the court appropriately instructed the jury to "decide each count separately" and that its "verdict on one count should not control [its] verdict on any other count."[15]

Even if Park had shown that the court would have granted a motion to sever, he has not demonstrated that there is a "reasonable probability" that the outcome would have been different. Despite the strong evidence against Park for many of the other charges, the jury acquitted Park of one charge of cyberstalking. This suggests that the jury followed its instructions to consider the evidence for each charge separately. Therefore, Park's attorney's failure to move to sever charges was not ineffective assistance of counsel.

D. Failure to Object to Evidence Introduced on Redirect that was outside the Scope of Cross-Examination

During the State's redirect examination of McCormick, the State introduced a picture of McCormick's house. Park argues that his counsel should have objected because the exhibit was outside the scope of cross-examination.

The purpose of redirect examination is to give the other side the opportunity to rehabilitate its witness or to clarify matters discussed during cross-examination. State v. Stevens, 69 Wn.2d 906, 907, 421 P.2d 360 (1966). But, the trial court has the discretion to admit or exclude rebuttal evidence that was outside the scope of cross-examination. State v. Hinkley, 52 Wn.2d 415, 419, 325 P.2d 889 (1958). It is not an abuse of that discretion to allow a party to "supply testimony omitted by oversight." State v. Conklin, 37 Wn.2d 389, 392, 223 P.2d 1065 (1950).

---

[15] CP at 139.

Park's trial counsel could have objected to the State's introduction of a picture of McCormick's house because it was outside the scope of cross-examination. Park's trial counsel's cross-examination of McCormick centered on her Facebook contact with Kim. Park's counsel never mentioned the location of McCormick's house.

However, trial counsel could have reasonably determined that an objection was unwise if she believed that the court would exercise its discretion to allow this evidence and, by objecting, she would waste the court's time. Therefore, Park's counsel's failure to object during McCormick's redirect examination was not ineffective assistance.

E. Failure to Present Mitigating Evidence at Sentencing

Park claims that his attorney "simply gave up on [him]" at sentencing.[16] Specifically, he argues that it was unreasonable for his attorney to fail to request a presentencing psychological evaluation or argue that all his sentences should run concurrently. Without those failings, he contends, there is a reasonable probability that the court would have imposed a shorter sentence. Based on the record before this court, Park cannot show either deficient performance or prejudice.

We cannot review claims that rely on evidence outside the record. State v. Wilson, 75 Wn.2d 329, 332, 450 P.2d 971 (1969). Park claims that a "pre-sentencing investigation or psychological evaluation" would have helped him.[17] But, we have no way of judging the impact of such information because none of it is in the record. In order for the court to determine that failure to consult an expert was prejudicial, the defendant must be able to show what evidence would have been discovered. See State v. Garcia, 57 Wn. App. 927, 933, 791 P.2d 244 (1990). If Park's claim of ineffective assistance of counsel relies

---

[16] Br. of Appellant at 28.
[17] Br. of Appellant at 26.

on evidence outside the record, he could bring that claim in a personal restraint petition. See RAP 16.4.

Additionally, Park has not established a nexus between his attorney's allegedly deficient argument and the sentence imposed. "[A]n allegedly unsuccessful or poor quality sentencing argument alone is unlikely to result in demonstrable prejudice because of the near impossibility of showing a nexus between the argument and the eventual sentence." State v. Goldberg, 123 Wn. App. 848, 853, 99 P.3d 924 (2004).

The record shows that the judge's reluctance to impose a sentence that would include community custody stemmed from how short that community custody would be, not from a belief that Park would not benefit from treatment. The judge expressed frustration that the sentencing scheme did not allow enough treatment to "make a dent in [Park's] overall need."[18] Additionally, the judge was "tempted to consider the full maximum 45" years.[19] Park has not shown that any possible argument by his trial counsel would have resulted in a shorter sentence. Therefore, his attorney's performance at sentencing was not ineffective assistance.[20]

## III. Exceptional Sentence

Park argues that the trial court abused its discretion because it relied on impermissible factors when deciding to impose an exceptional sentence and because the sentence of 300 months is five times longer than 60 months, the maximum sentence for

---

[18] RP (Feb. 28, 2014) at 521-22.
[19] RP (Feb. 28, 2014) at 523.
[20] Park claims that the State argued that Park should receive a longer sentence because he failed to accept a plea agreement. The State does not appear to have made that argument. Park cites to his trial counsel's comment that Park (in his statement to the court during sentencing) did not "accept responsibility" for his actions, and to the State's decision to add additional counts of cyberstalking when Park refused the State's offered plea. RP (Feb. 28, 2014) at 511; CP at 290.

each of the nine convictions. The trial court did not abuse its discretion because it based its decision only on proper grounds, and because the length of Park's sentence was not clearly excessive.

### A. Standard of Review

To reverse an exceptional sentence, we must conclude that

> (a) Either that the reasons supplied by the sentencing court are not supported by the record which was before the judge or that those reasons do not justify a sentence outside the standard sentence range for that offense; or (b) that the sentence imposed was clearly excessive or clearly too lenient.

RCWA 9.94A.585(4). We review the legal justification for an exceptional sentence de novo. State v. France, 176 Wn. App. 463, 469, 308 P.3d 812 (2013), review denied, 179 Wn.2d 1015, 318 P.3d 280 (2014). We review the length of an exceptional sentence for abuse of discretion. France, 176 Wn. App. at 469.

The trial court properly imposed an exceptional sentence based on Park's high offender score. RCW 9.94A.589. A trial court may impose a sentence outside of the standard range, an exceptional sentence, when it finds that "[t]he defendant has committed multiple current offenses and the defendant's high offender score results in some of the current offenses going unpunished." RCW 9.94A.535(2)(c). These are called "free crimes." France, 176 Wn. App. at 468. Here, the court imposed consecutive sentences based on the free crimes principle.[21] Under the Sentencing Reform Act of 1981, chapter 9.94A RCW, the sentencing range increases based on the defendant's offender score, up to a score of 9. RCW 9.94A.510. Park's score was 22 for each count.[22]

---

[21] "Consecutive sentences may only be imposed under the exceptional sentence provisions of RCW 9.94A.535." RCW 9.94A.589(1)(a).

[22] Park's score may have been actually been 26, based on the State's recalculations before the sentencing hearing.

Park concedes that the free crimes principle applies to this case.

The court did not base its exceptional sentence on future dangerousness. Park's argument to the contrary is not supported by the record. The court did not mention dangerousness when it imposed the sentence.[23] It focused instead on the number of victims and the fact that the crimes against some of them would go unpunished if it ran all the sentences concurrently. The trial court's "Findings of Fact and Conclusions of Law for Exceptional Sentence" listed only the free crimes basis for the exceptional sentence.[24]

It was not an abuse of discretion for the trial court to impose a 300 month sentence, even though the maximum sentence would have been 60 months if the sentences all ran concurrently. "When no improper reasons are involved, a 'sentence is excessive only if its length, in light of the record, shocks the conscience.'" State v. Burkins, 94 Wn. App. 677, 701, 973 P.2d 15 (1999) (internal quotation marks omitted) (quoting State v. Vaughn, 83 Wn. App. 669, 681, 924 P.2d 27 (1996)). Park's only argument against the length of the sentence is that it is five times the standard sentence range. That is not a sufficient basis to find an abuse of discretion. See State v. Ritchie, 126 Wn.2d 388, 397, 894 P.2d 1308 (1995) (holding that exceptional sentences do not need to be proportional in length to the standard sentence). Therefore, the court did not err in imposing a 300 month sentence.

---

[23] The closest the court came to mentioning future dangerousness was "And I have absolutely no doubt that Mr. Park's behavior will continue if unchecked by this court." RP (Feb. 28, 2014) at 521.

[24] CP at 294.

Affirmed.

WE CONCUR:

_Trickey, J_

_Spearman, CJ._          _Leach, J._