# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 54573-0-II |
| Respondent, | |
| v. | |
| LEONARD MARVING YOUNG, JR., | UNPUBLISHED OPINION |
| Appellant. | |

CRUSER, J. – Leonard Young was charged with child rape and child molestation against his niece KT and indecent liberties against his niece NN after his nieces reported abuse to their mother. The girls each reported the sexual assaults very shortly after they occurred. All of the charges were tried together. At trial, the State presented evidence that, early in the morning on the day of the sexual assault, Young lay down on NN's bed and said "I want that pussy." The State also presented expert testimony from the nurse practitioner who examined the girls. She testified that KT's physical examination and report of pain were consistent with her account of the abuse. Young appeals his convictions, arguing that (1) the trial court abused its discretion by allowing testimony about his comment made while on NN's bed, (2) he was denied effective assistance of counsel because his trial counsel failed to request a severance of the charges and failed to request a limiting instruction regarding the admission of the comment, and (3) the expert's testimony improperly commented on the victim's credibility.

We hold that (1) Young has failed to preserve his challenge regarding the admissibility of Young's sexual comment, (2) Young was not denied effective assistance of counsel, and (3) Young has failed to preserve his challenge regarding the expert opinion testimony. Accordingly, we affirm Young's convictions.

FACTS

I. UNDERLYING INCIDENT

In late October 2019, Young was released from prison and planned to live with his sister, Lucinda Thompson. Thompson and her children had recently moved into her cousin's house, and she shared a bedroom with four of the children on the bottom floor of the house. Her two sons slept on the bottom of a bunk bed, and her nine year old daughter, KT, slept on the top bunk. Thompson shared a queen-sized bed with her oldest daughter, sixteen year old NN. During the time relevant here, Thompson was not sleeping in her normal bed with NN. Instead, Thompson was sleeping in her cousin's room because her cousin was not at home.

On the morning of Halloween, NN woke up around 3:00 or 4:00 and began putting on makeup for her costume, which she planned to wear to school. During this time, Young got up from the couch, where he was sleeping, and lay himself down on NN's bed. While NN's back was turned to Young, he said, "I want that [pussy]." 1 Verbatim Report of Proceedings (VRP) at 93. NN "thought it was weird, but he was talking in his sleep or something." *Id.* at 94. NN turned slightly to look at Young, and she saw "his hand moving like if he was touching himself," and then she tried not to look at him. *Id.* NN did not tell her mom about Young's comment.

That night, the family went trick-or-treating together. Afterward, the children went home to sleep. Young and Thompson went to a bar with Thompson's friend, Jerry Meas. Young and

Thompson returned home from the bar, and Meas eventually joined them at the house. When Young and Thompson got home, Young went into the children's room and lay on NN's bed. After Meas arrived at the house, he and Thompson went up to Thompson's cousin's room to talk.

NN stayed up for a bit longer and then went to bed. She woke up with Young's hand in her underwear. She pushed his hand away, jumped up, and used the light from her phone to figure out that it was Young who was touching her. It looked like Young was pretending to be asleep. NN went upstairs to tell her mom about what happened.

About 20 minutes later, KT also came into the room crying and said "uncle tried having s-e-x" with her. *Id.* at 101. Young had picked her up off of the top bunk, put her on the bigger bed, and put a blanket over her. Young then pulled KT's underwear down and put his mouth on her "private." *Id.* at 120. He then "leaned [her] on [her] side and tried to put it in [her] area." *Id.* KT explained at trial that "[h]e put it around [her] butt." *Id.*

Thompson took KT in the bathroom to see if she had any injuries. KT had no underwear on and her genitals were "bright, bright red." *Id.* at 145. Young was charged with first degree child rape and first degree child molestation for his abuse of KT and indecent liberties for his abuse of NN.

## II. TRIAL

Prior to trial, the court held a hearing to resolve evidentiary issues. The State asked the trial court to admit testimony about Young's sexually suggestive comment toward NN. The court indicated that the comment was admissible under ER 404(b) as evidence of a "lustful disposition," but the court asked for Young's position. VRP (Mar. 10, 2020) at 17. Young argued that the

3

comment was "outside the events of the night he was accused of." *Id.* The trial court explained

that the comment was still admissible:

> It shows the defendant's lustful disposition towards the alleged victim. And in this case, the crime was allegedly committed within 24 hours of the 404(b) act, which is the statement that Mr. Young allegedly made to the victim. And it's a very grotesque and very obvious statement that makes his lustful disposition very obvious and so there's no question about that in my mind. So yes, that's coming in that – that is certainly admissible.

*Id.* at 17-18. Young did not present any additional argument on the issue.

At trial, NN, KT, Thompson, and Meas testified to the above facts. The State also presented

testimony from Judith Presson, an advanced registered nurse practitioner who evaluated NN and

KT about a month after Halloween. Presson testified that KT's examination was consistent with

her account of the abuse and her reported pain. For example, she explained that KT's account that

she experienced pain during the abuse "could be" consistent with something touching KT's hymen.

2 VRP at 180. In addition, the State asked Presson whether "an in-tact hymen and a report of pain

like that, is that consistent or inconsistent with her report to you?" *Id.* She responded that "[i]t

would be consistent with what she said." *Id.* Presson also stated that KT's report that she

experienced pain while urinating was consistent with her report of the events. Lastly, Presson

explained that the fact that she did not notice any "fissures, tears, scarring," or other abnormality

was consistent with KT's report. *Id.*

Young objected twice during Presson's testimony. The first occurred when the State asked

Presson to describe how male genitalia would be able to touch the hymen, and Young objected

based on speculation. The court overruled this objection. The second occurred when the State

asked Presson whether it was "possible that slight penetration occurred." *Id.* at 184. The court

sustained Young's objection to this question. Neither of these questions or responses concerned the consistency of KT's report.

In closing argument, the State mentioned Young's comment on the morning of Halloween: "[NN] testified . . . [Young] came behind, . . . and said some – I will just describe as some salacious things to her, right? I want some of that p-u-s-s-y, is what [NN] said on the stand." *Id.* at 214-15. Young contended that the comment occurred while he was sleeping:

> [NN] said she thought he was talking in his sleep and not directing the comments at her, it made her uncomfortable, yes, but she thought he was asleep. He didn't make any effort to touch her, or do anything directly towards her. He was just laying there. She thinks possibly masturbating, but obviously intoxicated. Again, said he smelled of alcohol, and he was muttering things as he sleeps. That doesn't show a lustful disposition towards [NN]. That just shows that he talks in his sleep.

*Id.* at 225-26.

The State also remarked during its closing argument that the jury needed to judge the credibility of the witnesses: "So what it comes down to, folks, is, do you believe [NN] and [KT]? Do you believe them? Do you believe what they told you?" *Id.* at 219. The jury was instructed: "You are the sole judges of the credibility of each witness. You are also the sole judges of the value or weight to be given to the testimony of each witness." Clerk's Papers (CP) at 86. The jury was also instructed on expert opinions: "A witness who has special training, education, or experience may be allowed to express an opinion in addition to giving testimony as to facts. You are not, however, required to accept his or her opinion." *Id.* at 90. The jury was also instructed, "You must decide each count separately. Your verdict on one count should not control your verdict on any other count." *Id.* at 87.

The jury found Young guilty on all charges. Young appeals.

## DISCUSSION

### I. SEXUALLY SUGGESTIVE COMMENT

Young argues that the trial court erred in admitting his statement, "I want that pussy," as evidence of a lustful disposition because he did not direct the comment to either of the victims, and thus there was not a sufficient connection between the comment and either of the victims.[1] This challenge to the admission of the remark is different than the objection Young lodged below. We hold that Young failed to preserve this claim of error.

### A. LEGAL PRINCIPLES

A trial court's decision to admit evidence is reviewed for abuse of discretion. *Gonzales*, 1 Wn. App. 2d 809, 819, 408 P.3d 376 (2017). A court abuses its discretion when its decision is "manifestly unreasonable or based on untenable grounds or reasons." *Id.*

However, a party assigning error to an evidentiary ruling must predicate its claim on the specific ground asserted at trial. *State v. Guloy*, 104 Wn.2d 412, 422, 705 P.2d 1182 (1985) ("Since the specific objection made at trial is not the basis the defendants are arguing before this court, they have lost their opportunity for review."). The purpose of this rule is to give the trial court the opportunity to prevent or cure the error. *State v. Kirkman*, 159 Wn.2d 918, 926, 155 P.3d 125 (2007).

---

[1] Young purports to assign error to the trial court's failure to conduct an ER 403 or 404(b) analysis. However, Young provided no argument on this issue in his brief. RAP 10.3(a)(6) directs each party to supply in its brief, "argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record." Furthermore, "[p]assing treatment of an issue or lack of reasoned argument" does not merit our consideration. *Holland v. City of Tacoma*, 90 Wn. App. 533, 538, 954 P.2d 290 (1998). Accordingly, we decline to address this issue.

B. ANALYSIS

Young's assertion of error on appeal is predicated on a different objection to this evidence than he made at the trial court. On appeal, Young argues that the admission of NN's testimony that he said "I want that pussy" on the morning of Halloween was improper because there was not a sufficient connection between the comment and NN or KT. Specifically, he contends that his comment was not directed toward either NN or KT.[2]

The trial court addressed Young's comment at an evidentiary hearing prior to trial. The trial court ultimately held that the comment was admissible to show Young's "lustful disposition" toward NN.[3] VRP (Mar. 10, 2020) at 17. When asked whether Young had a position as to the admissibility of the statement, defense counsel argued that the comment was "outside the events of the night he was accused of." *Id.* Young did not dispute the factual assertion inherent in the State's motion to admit the evidence, to wit: that the statement was made, and that it was directed at NN. Rather, Young's sole basis for objection was a temporal one—that the statement was made too far in advance of the alleged crimes to be relevant.

Had Young lodged the objection below that he now lodges on appeal, the trial court would have held a factual hearing to determine whether a preponderance of the evidence supported the

---

[2] We note that no testimony suggested, and the State never argued, that this comment was directed toward KT in any way. *See*, *e.g.*, 2 VRP at 214-15 ("[NN] testified . . . [Young] came behind, . . . and said some – I will just describe as some salacious things to her, right? I want some of that p-u-s-s-y, is what [NN] said on the stand.").

[3] After the parties' briefing, the supreme court rejected the term "lustful disposition" and held that it is not a permissible separate means of admitting evidence of prior sexual misconduct. *State v. Crossguns*, No. 99396-3, slip. op. at 12-13 (Wash. Mar. 10, 2022), https://www.courts.wa.gov/opinions/pdf/993963.pdf. However, evidence of prior sexual misconduct may still be properly admitted for other purposes under ER 404(b). *Id.* at 13-15.

assertion that the comment was directed at NN. *See State v. Gresham*, 173 Wn.2d 405, 421, 269 P.3d 207 (2012). Had the trial court found the statement was *not* directed at NN, the trial court could not have admitted the evidence of Young's comment under the State's theory of admissibility. However, Young deprived the trial court of the opportunity to settle this factual question by failing to lodge the specific objection below that he now wishes for us to resolve on appeal. "Resolution of factual disputes is a task for the trier of fact, not [the appellate] court." *State v. Solomon*, 3 Wn. App. 2d 895, 906, 419 P.3d 436 (2018).

Because Young's challenge to the trial court's evidentiary decision on appeal was not brought below, we decline to review this claim.[4]

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Young argues that he was denied effective assistance of counsel when his attorney failed to request a limiting instruction pertaining to Young's comment to NN and failed to request severance of his charges.[5] We hold that Young was not denied effective assistance of counsel.

---

[4] Because Young does not does not demonstrate or even argue that this issue, which is premised on the trial court's alleged violation of an evidence rule, involves a constitutional error, we do not discuss RAP 2.5(a)(3). The closest Young comes to such an argument is in the harmless error section of his brief, when he comments that "[r]eversal is required when within a reasonable probability, the erroneous admission of evidence materially affected the outcome. *State v. Everybodytalksabout*, 145 Wn.2d 456, 468-69, 39 P.3d 294 (2002). This is so because the defendant is denied his or her constitutional right to a fair trial." Br. of Appellant at 18. Notably, Young does not provide a citation to legal authority for the assertion that a defendant is denied the constitutional right to a fair trial when a trial court erroneously admits evidence. Where, as here, "no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none." *DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372 P.2d 193 (1962).

[5] In his opening brief, Young also argued that he was denied effective assistance of counsel when his trial counsel failed to object to the admission of the sexually suggestive comment (issue I *supra*). However, he withdrew this argument in his reply brief.

A. LEGAL PRINCIPLES

The right to counsel includes the right to effective assistance of counsel. *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011). To prevail on a claim of ineffective assistance of counsel, a defendant must show "(1) that defense counsel's conduct was deficient, . . . and (2) that the deficient performance resulted in prejudice." *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004).

Performance is deficient if it falls below an objective standard of reasonableness based on the record established at trial. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). There is a strong presumption that counsel performed reasonably, but this presumption can be overcome when " 'there is no conceivable legitimate tactic explaining counsel's performance.' " *Grier*, 171 Wn.2d at 33 (quoting *Reichenbach*, 153 Wn.2d at 130). To establish prejudice, the defendant must show that " 'there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different.' " *Id.* at 34 (quoting *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009)). We need not address both prongs of the test when the defendant's showing on one prong is insufficient. *State v. Foster*, 140 Wn. App. 266, 273, 166 P.3d 726 (2007).

B. ANALYSIS

*1. Failure to Request Limiting Instruction*

Young argues that he was denied effective assistance when his trial counsel failed to request an instruction that the sexually suggestive comment should only be considered in relation to NN. He argues he was prejudiced because, as a result, "the jury was permitted to use the evidence to convict in the unrelated case involving K.T." Br. of Appellant at 25. We disagree.

As we note above, the State never asserted that Young's comment was directed toward KT, nor did any witness testify that Young's comment was directed to KT. The State argued only that the sexually suggestive comment was directed to NN. Young contends that the prosecutor's closing argument allowed the jury to use this evidence in its consideration of the charges involving KT when the State told the jury members that it was their job to judge the credibility of NN and KT, saying, " 'So what it comes down to, folks, is, do you believe [NN] and [KT]? Do you believe them? Do you believe what they told you?' " Br. of Appellant at 25 (quoting 2 VRP at 219). However, it simply does not follow that the prosecutor remarking that the jury members were the judges of the credibility of the witnesses equated to the prosecutor arguing that the sexually suggestive remark made to NN was evidence that Young abused KT. [6]

Therefore, Young's argument that he was prejudiced because the jurors considered the sexually suggestive comment made to NN in relation to his offenses against KT is unpersuasive. Under the facts of this case, there is no danger that the jury would have concluded that the comment was directed toward KT. We hold that Young was not denied effective assistance of counsel on this basis.

### 2. Failure to Request Severance of Charges

Young argues that defense counsel was ineffective by failing to move for severance of the charges for his conduct against each victim. We disagree.

---

[6] The State also referenced the trial court's "Instruction No. 1" in this portion of its closing argument, and the instruction appears to include language reflected in the Washington Pattern Jury Instructions. 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 1.02 (5th ed. 2021) ("You are the sole judges of the credibility of each witness.").

a. Legal Principles

"Separate trials are not favored in Washington and defendants seeking severance have the burden of demonstrating that a joint trial would be so manifestly prejudicial as to outweigh the concern for judicial economy." *State v. Hoffman*, 116 Wn.2d 51, 74, 804 P.2d 577 (1991).

To establish prejudice in the context of an ineffective assistance of counsel claim arising from counsel's failure to move for severance, the defendant must show (1) "that a severance motion would likely have been granted," and (2) that "there is a reasonable probability that the jury would not have found him guilty of" the severed charges. *State v. Sutherby*, 165 Wn.2d 870, 884, 204 P.3d 916 (2009). The trial court considers the following factors to determine whether charges should be severed: " '(1) the strength of the State's evidence on each count; (2) the clarity of defenses as to each count; (3) court instructions to the jury to consider each count separately; and (4) the admissibility of evidence of the other charges even if not joined for trial.' " *Sutherby*, 165 Wn.2d at 884-85 (quoting *State v. Russell*, 125 Wn.2d 24, 63, 882 P.2d 747 (1994)). After this balancing, "any residual prejudice must be weighed against the need for judicial economy." *Russell*, 125 Wn.2d at 63.

b. Analysis

Young argues that the four factors above support severance of the charges against him. We disagree.

As to the first factor, the State's evidence as to each victim was very strong. The evidence consisted of testimony from both victims, as well as corroboration from the adults to which the victims reported the abuse, including expert testimony. Each victim reported their abuse separately, and the reports were made immediately after the abuse occurred. NN testified about

Young's comment, "I want that pussy," in the morning on the day the abuse occurred. And KT had observable injury and reported pain from the abuse. Although Young characterizes the State's evidence as "scant and generally weak," the State's evidence as to each of these charges was actually quite strong. Br. of Appellant at 26. This factor does not weigh in favor of severance.

As to the second factor, the clarity of defenses as to each count, Young's defense as to both victims was the same: denial that any touching occurred. With regard to KT, Young argued that KT's testimony had "enough inconsistencies" that the jury should have a reasonable doubt. 2 VRP at 227. With regard to NN, Young denied that he had sexual contact with her and alternatively argued that, if he did, the contact occurred while he was asleep.[7]

Although there were slight differences in Young's defenses regarding each victim, the defenses were not mutually antagonistic. And even when defenses are mutually antagonistic, severance is not necessarily required. *Hoffman*, 116 Wn.2d at 74; *State v. Bythrow*, 114 Wn.2d 713, 720-22, 790 P.2d 154 (1990). The burden is on Young to demonstrate "that the conflict is so prejudicial that defenses are irreconcilable, and the jury will unjustifiably infer that this conflict alone demonstrates" guilt. *Hoffman*, 116 Wn.2d at 74. In his brief, Young devotes almost no argument to this factor, relying merely on the fact that, in *Sutherby*, 165 Wn.2d at 885, this factor was found to weigh in favor of severance, and on his attorney's brief argument at trial that he was asleep during any sexual contact that may have occurred with NN. We conclude that Young has not shown this factor to weigh in favor of severance.

---

[7] Regarding the abuse of NN, we note that the "sleep sex" defense is an affirmative defense which the defendant must prove by a preponderance of the evidence. *State v. Deer*, 175 Wn.2d 725, 740-41, 287 P.3d 539 (2012).

As to the third factor, the jury was properly instructed to consider each count separately and that its verdict on one count should not control its verdict on other counts. Therefore, this factor does not weigh in favor of severance.

As to the fourth factor, the cross-admissibility of the charges, Young frames this factor only in terms of the cross-admissibility of the sexually suggestive comment. However, this factor looks at whether evidence in each case would be cross-admissible in the other case generally. *Sutherby*, 165 Wn.2d at 885. Here, the sexually suggestive comment was a small piece of the overall evidence submitted to the jury. Because Young raises this issue in the context of ineffective assistance of counsel, he bears the burden of persuading us that evidence in each of these cases would *not* have been admissible in a trial on the other case. To the extent that Young confines his argument only to the sexually suggestive comment, he fails to meet this burden. Therefore, this factor weighs against Young.

Young fails to demonstrate that a severance motion would have been granted.

Moreover, Young does not establish, or even argue, that there is a reasonable probability that the outcome would have been different—specifically, that he would have been acquitted of any of the charges in each case had they been tried separately. Under *Sutherby*, prejudice requires the defendant to show *both* that a motion to sever would likely have been granted and that there is a reasonable probability that he would have been acquitted of the severed charges. *Id.* at 884. The *Sutherby* court reversed only the defendant's convictions for child rape and molestation because the defendant conceded he could not demonstrate prejudice with respect to the child pornography charges, and he did "not seek reversal of those charges based on ineffective assistance of counsel." *Id.* at 887 n.8. Here, Young does not specify which charges he asks us to reverse, nor has he argued

that a new jury would decide any of the charges differently in a separate trial. *See, e.g.*, *State v. Warren*, 55 Wn. App. 645, 655, 779 P.2d 1159 (1989) (holding defendant was not prejudiced by counsel's failure to move for severance because the court could "find no basis to conclude that the jury might reasonably have performed this assessment differently had the charges been tried separately."). Therefore, Young cannot establish the requisite prejudice.

Young's sole reliance on *Sutherby* is unavailing. In *Sutherby*, the defendant was charged with first degree child rape, first degree child molestation, and possession of child pornography, and all charges were tried in one trial. 165 Wn.2d at 874. During the defendant's arrest for the sexual abuse, officers searched two of his computers after obtaining his consent and found several files containing child pornography. *Id.* at 875-76. The defendant denied sexually abusing the child victim, and he argued at trial that he inadvertently downloaded the child pornography when downloading adult pornography. *Id.* at 885. The supreme court held that counsel was ineffective for failing to request severance of the charges. *Id.* at 887.

The court reasoned that a motion to sever likely would have been granted because (1) the evidence of possession of child pornography was stronger than the evidence for the rape and molestation charges, (2) the defendant had separate defenses for the charges, (3) even though the jury was instructed to decide each count separately, the State argued that the defendant's possession of child pornography supported the child victim's allegations, and (4) the evidence of possession of child pornography would have been subject to exclusion under ER 404(b) because it would "merely show Sutherby's predisposition toward molesting children" rather than the particular victim. *Id.* at 885-86. Based on this analysis, the court also explained that the outcome likely would have been different for a separate trial on the rape and molestation charges. *Id.* at 887.

The separate charge of child pornography in *Sutherby* was factually unrelated to the rape and molestation charges. *Id.* at 875-76. Young claims that he similarly was "charged with separate and distinct crimes in which there was no overlap." Br. of Appellant at 29. However, the charges and evidence against Young on each charge had significant overlap. Although the victims each testified to events unique to them, the events occurred within approximately 20 minutes of each other, and both victims immediately reported the abuse to the same two adults, who both testified at trial. NN was still talking to Thompson and Meas about Young's abuse when KT came in to report the rape and molestation. *Sutherby* is distinguishable.

Here, Young cannot establish that he would have been acquitted of the charge involving NN, or the charges involving KT, had the cases been tried separately. Accordingly, his ineffective assistance of counsel claim fails.

We hold that Young was not denied effective assistance of counsel.

### III. Improper Opinion Testimony

Young argues that the State's expert testimony that KT's physical examination was consistent with her report of the events improperly bolstered KT's credibility. We hold that Young failed to preserve this challenge.

### A. Legal Principles

As we note above, "[a] party may assign evidentiary error on appeal only on a specific ground made at trial." *Kirkman*, 159 Wn.2d at 926; *see also Guloy*, 104 Wn.2d at 422. We may decline to review claims of error that the defendant did not raise in the trial court. RAP 2.5(a). However, a defendant can raise a "manifest error affecting a constitutional right" for the first time on appeal. RAP 2.5(a)(3). This exception "does not permit *all* asserted constitutional claims to be

raised for the first time on appeal." *Kirkman*, 159 Wn.2d at 934. Rather, "[w]e look to the asserted claim and assess whether, if correct, it implicates a constitutional interest as compared to another form of trial error." *State v. O'Hara*, 167 Wn.2d 91, 98, 217 P.3d 756 (2009).

After determining whether the alleged error is of constitutional magnitude, the court looks to whether the error is manifest. *Id.* at 99. Error is manifest under RAP 2.5(a) if the appellant can show actual prejudice, demonstrated by a " 'plausible showing by the [appellant] that the asserted error had practical and identifiable consequences in the trial of the case.' " *O'Hara*, 167 Wn.2d at 99 (alteration in original) (internal quotation marks omitted) (quoting *Kirkman*, 159 Wn.2d at 935). The defendant bears the burden of demonstrating that the alleged error is both manifest and of constitutional magnitude. *State v. Knight*, 176 Wn. App. 936, 950-51, 309 P.3d 776 (2013).

B. ANALYSIS

Young did not object to the testimony he now challenges on appeal. Therefore, Young must show that admission of the testimony was a manifest error affecting a constitutional right. *Kirkman*, 159 Wn.2d at 926.

Although opinion testimony regarding victim credibility implicates the constitutional right to a jury trial, this is not necessarily manifest constitutional error. *Id.* at 927. "Admission of witness opinion testimony on an ultimate fact, without objection, is not automatically reviewable as a 'manifest' constitutional error. 'Manifest error' requires a nearly explicit statement by the witness that the witness believed the accusing victim." *Id.* at 936.

*Kirkman* involved two separate cases in which the State's medical expert testified as to whether the victim's physical examination was consistent with the victim's report. *Id.* at 923-24. The defendant did not object in either instance. *Id.* The supreme court held that this was not

manifest constitutional error that could be raised for the first time on appeal because the testimony related only indirectly to the victims' credibility. *Id.* at 922. This was in part because the expert never gave an opinion that the defendant was guilty or that he believed the victim. *Id.* at 933, 936. The court also "concluded there was no prejudice in large part because, despite the allegedly improper opinion testimony on witness credibility, the jury was properly instructed that jurors 'are the sole judges of the credibility of witnesses,' and that jurors 'are not bound' by expert witness opinions." *State v. Montgomery*, 163 Wn.2d 577, 595, 83 P.3d 267 (2008) (internal quotations omitted) (quoting *Kirkman*, 159 Wn.2d at 937).

Here, Presson, the nurse practitioner, testified that KT's physical examination and her reported pain were consistent with her account of what happened. Young contends that, in eliciting this testimony, the State "went further than asking Ms. Presson if KT gave any indication she was lying. Here the State repeatedly asked Ms. Presson if KT's report of discrete acts that occurred during the assault was consistent with her report of pain." Br. of Appellant at 31.

However, this is similar to the expert testimony in *Kirkman* that the victims' reports were "consistent" with their physical examinations. 159 Wn.2d at 923, 924. The supreme court held that this was not an improper opinion on the victim's credibility. *Id.* at 936-37.[8] In addition, here, the trial court instructed the jurors that they were the sole judges of credibility and that they did not

---

[8] The supreme court has also explained:

> To avoid inviting witnesses to express their personal beliefs, one permissible and perhaps preferred way is for trial counsel to phrase the question "is it consistent with" instead of "do you believe." For example, experts are often asked if a history is "consistent" with clinical findings or if certain assumptions are "consistent" with a conclusion. This court approved this form of question in *Kirkman*.

*Montgomery*, 163 Wn.2d at 592-93 (footnote omitted).

need to accept the expert's opinion. This was key to the court's determination that the defendants were not prejudiced in *Kirkman*. *Id.* at 937.

Young contends that his case is distinguishable from *Kirkman* because the expert opinion in *Kirkman* " 'neither corroborated nor undercut [the victim's] account.' " Br. of Appellant at 33 (quoting *Kirkman*, 159 Wn.2d at 930). But the court held that manifest error in this context "requires a nearly explicit statement by the witness that the witness believed the accusing victim." *Kirkman*, 159 Wn.2d at 936. Presson's testimony did not meet this standard.

Because Presson did not make a nearly explicit statement regarding KT's credibility, the admission of her testimony was not manifest constitutional error. Therefore, we hold that Young failed to preserve this challenge.

## CONCLUSION

We hold that Young failed to preserve his challenge regarding the admissibility of the sexually suggestive comment. In addition, we hold that Young was not denied effective assistance of counsel when his trial counsel failed to seek a limiting instruction or move for severance. Lastly, we hold that Young has failed to preserve his challenge regarding Presson's testimony. Accordingly, we affirm Young's convictions.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

No. 54573-0-II

                                                        CRUSER, J.

We concur:

WORSWICK, J.

LEE, C.J.

19